CASE 19.—ACTION BY THE KENTUCKY & INDIANA TELE-
PHONE CO. AGAINST THE RURAL HOME TELE:
PHONE CO.—February 20.

# Rural Home Tel'p Co. v. Ky. & Ind. Tel'p Co.

**Appeal from Daviess Circuit Court.**

T. F. BIRKHEAD, Circuit Judge.

Judgment for plaintiff, defendant appeals — Re-
versed.

1. Telegraphs and Telephones—Agreements Between Companies
—Effect.—A telephone company, operating a system with
exchanges in a city and elsewhere, was desirous of extending
its country business, and was instrumental in organizing
another company, with a system and exchanges at various
points. The companies were separate corporations, but the
general manager of the former was the president of the
latter. The two companies operated their systems as one
under an arrangement, continuing for several years, by which
there was a physical connection between their wires. There
was no written agreement or definite verbal contract between
them. Held, that the arrangement did not amount to a
contract and did not entitle either company to the reciprocal
rights and obligations growing out of contract rights, and
one company could not by reason of the arrangement com-
pel the other company to continue to receive and transmit
the messages of the former.

2. Same — Franchises—Constitutional Provisions.—Const. sec-
tions 163, 164, providing that no telephone company within
a city shall be authorized to erect its poles, etc., over the
streets, etc., without the consent of the legislative body of
the city, and that no city shall grant any franchise in refer-
ence thereto for a term exceeding twenty years, etc., are
mandatory, and must be read together in determining when
a franchise to a company may be granted, and a franchise

to establish and operate a telephone system in a city can only be acquired by complying therewith.

3. Same.—Under Const. section 199, providing that telephone companies operating exchanges in different towns and cities shall receive and transmit each other's messages, etc., a telephone company operating a telephone system with an exchange in a city without having obtained a franchise therefor in the manner prescribed by sections 163 and 164 cannot compel another company operating a system with an exchange elsewhere to receive and transmit messages in accordance with an arrangement by which the companies, without any contract therefor, operated their systems as one; section 190, if construed to be self-executing, applying only to companies that have acquired in a legal way the right to operate telephone systems.

4. Equity—Maxims—Clean Hands.—A corporation which in its origin and existence has continually violated the law cannot ask the assistance of the court to compel another corporation to transact business with it.

5. Telegraphs and Telephones—Actions By and Against Telephone Companies—Defenses—Availability.—A telephone company, operating a telephone system with exchanges in towns, when sued by another company, operating a system with an exchange in a city to compel the former to receive and transmit the messages of the latter, as required by Const. section 199, providing that telephone companies operating exchanges in different municipalities shall receive and transmit each other's messages, may defend by showing that the latter company has not acquired a franchise in the manner prescribed by sections 163 and 164, relating to the granting of franchises to telephone companies, since the act of the city in consenting to the latter company operating a system does not vest the latter company with legal rights and give it a standing in court that can only be obtained by a compliance with the law.

CLARENCE FINN for appellant Rural Home Tel'p Co.

SWEENEY, ELLIS & SWEENEY and FAIRLEIGH, STRAUS & FAIRLEIGH for appellant Cumberland Tel'p & Tel'g Co., HELM, BRUCE and MILLER & TODD for appellee.

(No briefs, record misplaced.)

OPINION. OF THE COURT BY JUDGE CARROLL—Reversing.

Some years prior to 1903 the Kentucky and Indiana Telephone Company owned and operated a telephone exchange in the city of Owensboro, and in connection therewith two exchanges in the county of Daviess outside of the city. Desirous of extending its country business, it was instrumental in organizing in 1903 a company called the "Rural Home Telephone Company," and this company established in the county of Daviess a telephone system, with exchanges at various points. Although the Kentucky & Indiana Telephone Company and the Rural Home Telephone Company were separate corporations, the general manager of the Kentucky & Indiana Telephone Company was the president of the Rural Home Telephone Company, and they were operated practically as one system; but there was no contract between the two companies. Under the arrangement between them, which continued from 1903 to January, 1907, there was a physical connection between the wires of the two companies, and the patrons of the Rural Home Telephone Company used the lines and exchange of the Kentucky & Indiana Telephone Company in conversing with people in Owensboro; and the subscribers of the Kentucky & Indiana Telephone Company were enabled by its connection with the Rural Home Telephone Company to talk to patrons of the latter living out in the country. In August, 1906, the Central Home Telephone Company, a holding corporation, came into the control of the Kentucky & Indiana Telephone Company, and soon thereafter ascertained that there was no contract between the Kentucky &

Indiana Telephone Company and the Rural Home Telephone Company. Thereupon a proposition was made by the management of the Kentucky & Indiana Telephone Company to L. M. Birk, who owned a large majority of the stock in the Rural Home Telephone Company and was its secretary and treasurer, that the two companies enter into a contract. This proposition which seemed to recognize the fact that there had never been any contract between the companies, not being acceptable to the Rural Home Telephone Company was rejected. Failing to make a satisfactory contract with the Kentucky & Indiana Company, the Rural Home Telephone Company entered into a contract with the Cumberland Telephone Company. After this contract was executed, and in January, 1907, all the lines of the Rural Home Telephone Company that connected with the lines of the Kentucky & Indiana Telephone Company were cut and attached to the lines of the Cumberland Telephone Company, whose lines run parallel into Owensboro with the lines of the Kentucky & Indiana Telephone Company. The effect of this action was to deprive the subscribers of the Kentucky & Indiana Telephone Company of the use and benefit of the lines and exchanges of the Rural Home Telephone Company, and the Kentucky & Indiana Telephone Company of the advantage it derived from its connection with the Rural Home Telephone Company in the interchange and transmission of messages to and from the city of Owensboro to all points in the county of Daviess reached by the Rural Home Telephone Company. When the Rural Home Telephone Company severed its physical connections with the Kentucky & Indiana Telephone Company, the latter brought this action against it and the Cumberland Telephone Company,

charging that the severance of connection was the result of an unlawful conspiracy between the two companies to injure the Kentucky & Indiana Telephone Company by transferring the Owensboro business of the Rural Home Telephone Company to the Cumberland Telephone Company, thereby depriving the subscribers of the Kentucky & Indiana Telephone Company of the country connections they had enjoyed before the severance took place. A temporary restraining order granting it the relief prayed for was issued, and upon final hearing, after the case had been prepared for trial, the court adjudged "the defendants Rural Home Telephone Company and the Cumberland Telephone Company, their agents, servants, and employes, be and they are hereby perpetually enjoined from cutting or severing the telephone line or lines connecting plaintiff's exchange with the exchanges of said defendant Rural Home Telephone Company, and from interfering in any way with the service between plaintiff's exchange and the exchange of said Rural Home Telephone Company, and said defendant Rural Home Telephone Company is further enjoined from failing or refusing to receive and transmit without unreasonable delay or discrimination messages coming from or through or destined to or from plaintiff's exchange."

The appeal before us is prosecuted from this judgment, and three grounds are relied on for its reversal: First that the Kentucky & Indiana Telephone Company has no franchise to operate in the city of Owensboro, and therefore cannot invoke the aid of the court to compel the Rural Home Company to connect or exchange business with it; second, that there was no contract between the two companies in respect to the interchange of business or the connection of their

lines, and the Rural Home Telephone Company had the right at any time to sever its physical relations; and third, that the judgment of the circuit court is fatally defective in failing to fix or provide any compensation to be paid to the Rural Home Telephone Company for the use of its lines and exchanges by the Kentucky & Indiana Company.

It is conceded that there was no written agreement or any definite verbal contract between the Kentucky & Indiana Telephone Company and the Rural Home Telephone Company during the time they operated in connection with each other, although there existed an arrangement under which their lines were connected and their business exchanged. This arrangement, which did not assume the dignity of a contract, or entitle the parties to the reciprocal rights and obligations that might be imposed by or grow out of contract rights, was not sufficient to justify the Kentucky & Indiana Telephone Company in resting its action for relief upon the violation of any contractual relation between the companies. Bastin Telephone Co. v. Richmond Telephone Co., 117 Ky. 122, 77 S. W. 702, 25 Ky. Law Rep. 1249. Indeed, counsel for the Kentucky & Indiana Telephone Company do not rely upon any contract between the two companies, or place their case upon the ground that any contract right has been violated. The chief contention is that, as the lines of the two companies were connected in such a manner as to constitute them for all practical purposes one company in the transmission of messages, the Rural Home Telephone Company had no legal right to sever the connection, thereby refusing to receive or transmit in the usual course messages. This contention is grounded upon section 199 of the Constitution, and is claimed to be supported by the

opinion of this court in the case of Campbellsville Telephone Company v. Lebanon Telephone Company, 118 Ky. 277, 26 Ky. Law Rep. 127, 80 S. W. 1114, 84 S. W. 518. That part of the section relied on reads as follows: "Telephone companies operating exchanges in different towns and cities, or other public places, shall receive and transmit each others messages without unreasonable delay or discrimination. The General Assembly shall by general laws of uniform operation provide reasonable regulations to give full effect to this section." In the Campbellsville Telephone Company Case, supra, it appears from the opinion that the Campbellsville Telephone Company and the Lebanon Telephone Company entered into a written contract, by which it was agreed that the Lebanon Telephone Company should build, equip, and maintain a first-class telephone line from Lebanon to Phillipsburg, to meet and attach to the lines of the Campbellsville Telephone Company at that place, and the Campbellsville Telephone Company agreed to build, equip, and maintain a first-class telephone line from Campbellsville to Phillipsburg, to meet and attach to the lines of the Lebanon Telephone Company; each company to keep its own line in good repair at its own expense. The controversy between the two companies came up in this way: Each of the companies fell into the possession of larger companies, and soon afterwards the Lebanon Telephone Company refused to the Campbellsville Telephone Company the right to make connection with the Lebanon exchange, and excluded its messages. Thereupon the Campbellsville Telephone Company applied for a mandamus against the Lebanon Telephone Company to compel it to receive messages as it had done after the contract was entered into. In other

words, the Campbellsville Telephone Company sought
a specific execution of the contract. The rights of
the complaining party to this litigation rested upon
the contract, and the court held that the Campbells-
ville Telephone Company was entitled to the relief
sought, but, in the course of the opinion, and by way
of illustrating the mutual rights and obligations of
telephone companies generally, discussed the mean-
ing and effect of section 199, saying that, when the
two telephone companies did make under the contract
the connection agreed upon, they complied with the
duty imposed by the law of their existence, and that
the section of the Constitution implies that such con-
nection shall not only be made and the service allowed,
but that it shall be maintained and continued. The
radical difference between that case and the one at
bar consists in the fact that there a binding and
enforceable contract existed between the parties and
the action was brought for the purpose of compelling
one of the companies to perform its part of the con-
tract. Here, although it may not be conceded in
terms, it must be admitted that there was no enforce-
able contract between the Kentucky & Indian Tele-
phone Company and the Rural Home Telephone Com-
pany. Confronted with this proposition, the Ken-
tucky & Indiana Telephone Company seeks to main-
tain that, although there was no enforceable contract,
yet the lines of the companies were physically con-
nected, and it relies on the constitutional provision
before mentioned to compel the Rural Home Tele-
phone Company to receive and transmit its messages
without unreasonable delay or discrimination. This
contention brings up for consideration the question
whether or not the Kentucky & Indiana Telephone
Company is in a position to invoke the assistance of

the constitutional provision referred to. In the disposition of this question we will not stop to inquire, as it is not before us, whether this section is self-executing or not, or examine into the reciprocal duties and obligations imposed by it upon telephone companies. If the attitute of the Kentucky & Indiana Telephone Company is such as to put it outside of the protection of this section, it is not material whether it is self-executing or not; nor it is necessary to consider what might be the rights of a company that was in a position to ask the court to apply in its behalf the beneficial provisions of this section.

In opposition to the claim of the Kentucky & Indiana Telephone Company that this section requires the Rural Home Telephone Company to receive and transmit its messages, the point is pressed on our attention by the Rural Home Telephone Company that the Kentucky & Indiana Telephone Company never had a franchise to operate in the city of Owensboro a telephone system, and, being a trespasser and violator of one section of the Constitution, it is not entitled to invoke in its behalf the benefits of another section of the Constitution. It stands admitted that the Kentucky & Indiana Telephone Company does not own or operate any system of telephones outside of the city of Owensboro, and that it was not granted in the manner required by the Constitution any franchise or privilege by the city to operate or conduct a telephone system within its limits. This being true, the question comes up, can it, in the absence of a contract, maintain an action against the Rural Home Telephone Company for refusing to transmit and receive its messages? And this involves the further inquiry, whether the Rural Home Telephone Company can raise the question that it has no franchise

or privilege. Sections 163 and 164 of the Constitution reads as follows:

"Sec. 163. No * * * telephone company within a city or town shall be permitted or authorized to * * * erect its poles, posts or other apparatus along, over, under or across the streets, alleys or public grounds of a city or town, without the consent of the proper legislative bodies or boards of such city or town being first obtained.

"Sec. 164. No county, city town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privileges or make any contract in reference thereto for a term exceeding twenty years. Before granting such franchise for a term of years, such municipality shall first after due advertisement receive bids therefor publicly, and award the same to the highest and best bidder, but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway."

These sections of the Constitution must be read together, as the right to occupy the streets and public way conferred by section 163 can only be granted in the manner provided in section 164. In all the cases involving these sections that have come before this court, the attempt has been made to give them such a construction as would fairly carry out the intention of their enactment. Some of these cases have come up between rival telephone companies, and among these cases we may notice the following:

In East Tennessee Telephone Company v. Anderson County Telephone Company, 115 Ky. 488, 24 Ky. Law Rep. 2358, 74 S. W. 218, the East Tennessee Telephone Company sued out an injunction against the Anderson County Telephone Company, restraining it from erecting poles, posts, and other apparatus

preparatory to or necessary to be used in the opera-
tion of a telephone exchange over and across the
streets, alleys, and public ways of the city of Law-
renceburg, upon the ground that it had an exclusive
franchise to establish and operate a telephone system
in the city.   The Anderson County Telephone Com-
pany, in its defense to this suit, charged that the fran-
chise alleged to be owned by the East Tennessee
Telephone Company was not granted in the manner
provided by the Constitution and statutes, and was
therefore void.   This contention was sustained, and
the petition of the East Tennessee Telephone Com-
pany was dismissed.   East Tennessee Telephone
Company v. Anderson County Telephone Company,
57 S. W. 457, 22 Ky. Law Rep. 418.   Thereupon the
Anderson County Telephone Company brought suit
for damages on the injunction bond executed by the
East Tennessee Telephone Company.   In this action
the Anderson County Telephone Company averred
that it had authority to construct and operate a tele-
phone line and exchange in the city.   The East Ten-
nessee Telephone Company in its answer denied that
the Anderson County Telephone Company had ever
obtained in the manner provided by law the right to
establish a telephone system in the city.   In a reply
the Anderson County Telephone Company admitted
that the law was not complied with in granting it
authority to occupy the streets of the city, but alleged
that the city authorities made no objection to its
doing so, and that, as the city was not objecting, the
East Tennessee Telephone Company had no right to
complain.   It being conceded that the Anderson
County Telephone Company was using the streets
and operating its exchange without the legal right
so to do, the question before the court was whether

it could maintain an action in damages against the East Tennessee Telephone Company because that company by injunction prevented it from doing an unlawful thing. In holding that the Anderson County Telephone Company could not maintain the action or recover damages, the court said: "In this action it can only recover upon the ground that it was prevented by an injunction sued out by appellant from exercising a lawful right to occupy the streets of the city; and as it is conclusively shown that it had no such legal right, but was a mere trespasser, it has no standing in court."

In Rough River Telephone Company v. Cumberland Telephone Company, 119 Ky. 470, 84 S. W. 517, 27 Ky. Law Rep. 32, the Cumberland Telephone Company was operating a telephone line over and along one of the public streets of Hartford, Ky., when the Rough River Telephone Company erected its poles in such a manner as to injure the service of the Cumberland Telephone Company. Thereupon the latter company obtained an injunction which was made perpetual, restraining the Rough River Telephone Company from interfering with its lines and poles. The Cumberland Telephone Company had not obtained in the manner provided by the Constitution or statutes the right to establish or conduct a telephone system in the city of Hartford. This being so, the question before the court was, could it maintain an action against the Rough River Telephone Company for interfering with its system? After quoting with approval the East Tennessee Telephone Company Case, supra, the court said: "No practical difference can be discovered between the effect of preventing a telephone company from operating its franchise by a wrongfully obtained injunction and from pre-

venting it from so doing by the wrongful erection of
a pole which merely bunched its wires without other-
wise injuring them.  The injury arises in both cases
from depriving the corporation of the power to earn
money by the operation of its franchise.  A mere
trespasser cannot complain that he is prevented from
continuing a wrongful act.  No injury is claimed to
the corporeal property of appellee.  The sole injury
is the prevention of the full exercise of its invalid
claim of a franchise of the streets of the city.  It
follows, that under the authority cited, as it has no
such franchise, it can have received no injury of which
equity will take cognizance.''

These cases are sound in principle, and, in our
opinion, are conclusive of the question that the Ken-
tucky & Indiana Telephone Company cannot maintain
this action.  In this case, as in those, the complaining
company has no franchise to conduct its business, and
hence cannot ask the aid of the court to protect it
from injury done to its business by the other com-
pany.  We are unable to distinguish the cases.  If
the Anderson County Telephone Company, because
it had no franchise to operate in Lawrenceburg, could
not recover damages from the East Tennessee Tele-
phone Company for an injury to its business, and if
the Cumberland Telephone Company, because it had
no franchise to do business in Hartford, could not
maintain an action against the Rough River Com-
pany for impairing its service, upon what theory can
the Kentucky & Indiana Telephone Company, that
has no franchise to establish or conduct a telephone
system in Owensboro, compel the Rural Home Tele-
phone Company to do business with it?  While vio-
lating the Constitution and the statute with one hand,
the appellant company is asking with the other the

protection of the court. This protection the court under the circumstances will not afford. Even if it be conceded that section 199 of the Constitution is self-executing, and that "telephone companies operating exchanges in different towns or cities or other public stations shall receive and transmit each others messages without unreasonable delay or discrimination," this protection only applies to companies that have acquired in a legal way the right to establish and operate telephone systems. The Campbellsville Case did not go further than this, and is no authority for appellee in the case here presented. It would be approving unlawful conduct and lending aid and assistance to violators of the law, to hold that a telephone company that had no legal standing in court could invoke the protection of the Constitution to prevent another telephone company from refusing or failing to transact business with it. A corporation that in its origin and existence has been a continual breaker of the law cannot ask the assistance of the court to compel another corporation to transact business with it. In the argument of counsel for appellant, directed to the point that the court will not inquire into the legal status of a corporation that, aside from its irregular organization or other delinquencies, may have a meritorious claim that the court would be disposed to regard with favor, our attention is called to the case of the Cumberland Telephone Company v. Louisville Home Telephone Company, 114 Ky. 892, 72 S. W. 4, 24 Ky. Law Rep. 1676. In this case the Home Telephone Company brought this suit against the Cumberland Telephone Company to restrain it from placing obstructions in the way of its wires and poles that interferred with the successful operation of its system. Among other defenses the

Cumberland Company insisted that the Home Telephone Company was a Delaware corporation, and that, as its articles of incorporation did not conform to the laws of Kentucky, it should not be recognized as a legal corporation in this State. In answer to this defense the court said: "Appellee (Home Telephone Company) has not only been incorporated in the state of Delaware, but it has been recognized by the authorities of the city of Louisville as a corporation, and has been granted by it an important and valuable franchise. It is at least a de facto corporation, and the rule seems to be that, when an association of persons is exercising corporate franchises under a color of legal organization, the existence of the corporation cannot be inquired into collaterally, but only in a direct proceeding by the government. * * * Where property has been granted to such a corporation, and it brings a suit to recover its property, the defendant cannot be allowed to inquire into the regularity of the organization in that suit upon the broad principles of common justice and public policy. * * * To allow a trespasser who has destroyed its property to defeat an action against him by the corporation on the ground that it was not originally properly incorporated, when the State is not complaining, and the municipality has recognized and contracted with the corporation, would be a perversion of justice." It will readily be perceived that the principles announced in this case are not in conflict with the views expressed in this opinion; and it is equally manifest that it has no essential bearing upon the question presented by this record. In that case the Home Telephone Company, which was at least a de facto corporation, was asking the court to protect its property rights from invasion and destruction by a rival

company. · It was· not invoking the aid of one section of the Constitution, while openly disobeying another; nor did it appear in court, asking the protection of the law, while being itself a trespasser, without legal status..

The argument is made that the public has an interest in the operation and conduct of telephone systems, and that, although the Kentucky & Indiana Telephone Company is operating its line without license so to do, it was· giving to the public a satisfactory service, and, in the absence of complaint by the public, the Rural Home Telephone Company could not, to the detriment of the public interest, refuse to transmit and receive its messages. It may be conceded that the service rendered by the Kentucky & Indiana Telephone Company in connection with the Rural Home Telephone Company was satisfactory to the public, and that some of its patrons were subjected to inconvenience by the severance of the relations between the two companies; but the Kentucky & Indiana Telephone Company will not be permitted in this controversy to protect itself from the consequence of its wrongful acts upon the pretense that the public good will be promoted by its continued violation of the law. It must be kept in mind that this controversy is distinctly between these two telephone companies. The Kentucky & Indiana Telephone Company is not complaining that any physical injury was done to its property, nor can it successfully maintain that its legal rights have been invaded. · It brings this action to compel the Rural Home Telephone Company to continue connections with it. In answer to this the Rural Home Telephone Company replies: You are a trespasser. You have no legal right to do business, and therefore it was

my privilege at any time, there being no contract between us, to sever my business relations with you. And in this position it is fully sustained by the case before mentioned. Having elected in the establishment of its telephone system not to comply with the law, the courts will leave it where it placed itself— outside the pale of the law—and decline to afford it the redress that an observance of the Constitution and obedience to the law might have given it.

It is probably true, as stated by counsel for appellant, that there are companies operating telephone exchanges that have not acquired under the law rights of way along the public roads and across fields, and it may be that a defense of this nature would not be sufficient to hinder the court in allowing to such company the benefits conferred by section 199 of the Constitution. Upon this question, however, we express no opinion, as it is not before us. We are dealing with the facts of the case we have, and will not be led away from the issues presented by the record to the consideration of supposed difficulties that might come up under a different state of facts. Sections 163 and 164 of the Constitution, as has been often ruled, are mandatory. The franchise or privilege to establish and operate a telephone system in a city or town can only be acquired by observing the constitutional provisions, and a company that seeks to defend its right to the use of the streets and highways of a city in any other way than under the Constitution is a trespasser, and without standing in court. In this condition the appellant company comes to the court and asks relief that cannot for the reasons stated be granted. We express no opinion as to what the status of the Kentucky & Indiana Telephone Company would be if its organization was irregular, or

if, in other particulars, it was violating or had failed
to comply with the law, or was disregarding the rights
of other people, or was seeking to enforce or defend
contracts made with subscribers or other persons.

It is further insisted that, although the city of
Owensboro might have the right to raise the question
that the Kentucky & Indiana Telephone Company is
occupying its streets without right, the Rural Home
Telephone Company in this controversy cannot make
this defense. In support of this proposition counsel
rely upon Cosby v. Owensboro & Russellville R. Co.,
10 Bush, 288, and Dulaney v. L. & N. R. Co., 100 Ky.
628, 18 Ky. Law Rep. 1088, 38 S. W. 1050, following
it. In the Cosby Case certain property owners sought
to enjoin the construction of the railroad along one
of the streets of the city, claiming that it would dam-
age their property, and also upon the ground that
the company had no lawful right to construct its road
in the street, because the city council had undertaken
to grant the right of way without proper legislative
authority for so doing. In considering the rights of
the complaining property owners, the court said:
"The rights of the authorities of a city, with legis-
lative warrant, to permit the construction and opera-
tion through its streets of railroads upon which trains
of cars are propelled by steam, is now an open ques-
tion. Those who purchase lots bordering on a street
take their title, subject to the appropriation of the
street to such public uses, promotive of commerce and
business, as the general good of a city or town may
require." In refusing the property owners relief,
the court did not find it necessary to decide whether
the city authorities had or not the necessary legisla-
tive authority to grant a railroad company the right
to lay down its tracks and operate its road through

the streets, resting its conclusion upon the ground that the city was not a party to the suit or complaining; and the abutting property owners who brought the action failed to show that they suffered any injury distinct from that sustained by the general public, saying: "The entry by the railroad company was an entry upon the possession of the public. The right of action, if there be one, is in the municipal authorities representing the local public immediately interested in Lewis street. If the public shall at any time abandon the use to which the land constituting a street was dedicated, then the right of possession will revert to the lot owners, and they may complain that the railroad company is encroaching upon their private rights. But, so long as they are not entitled to the possession, and so long as none of their property rights are directly and immediately injured by the acts of the railroad company, they can have no relief, except through the action of the municipal government, charged by law with the duty of preserving and keeping open and in repair the streets of Owensboro." It will be observed that the only point determined in the Cosby Case was that the abutting property owners, unless they could show that their private rights were impaired by the operation of the railroad in the streets, could not raise the question as to whether or not the railroad company was lawfully or unlawfully occupying the street, and this upon the ground that whether its occupation was lawful or unlawful did not give it the right to injure or take the property of the adjoining owners, and that they had no right of action until they had shown that their private rights were in some way impaired.

The attempt is made to apply the doctrine of that

case to the one at bar, upon the theory that, as the city of Owensboro recognizes and acquiesces in the right of the Kentucky & Indiana Telephone Company to occupy its streets and transact its business, the Rural Home Telephone Company will not be heard to interpose a defense that the city alone might make. This argument overlooks or ignores what we conceive to be, and have endeavored to show, is the fatal objection to the right of the Kentucky & Indiana Telephone Company to maintain this action against the Rural Home Telephone Company. It is not a question what the city of Owensboro may or may not do. The fact that it has consented to the occupation of its streets by the Kentucky & Indiana Telephone Company does not meet the issue. The Constitution points out in plain terms the way by which a telephone company may obtain the right to occupy the streets of a city or town. If it fails or refuses to comply with these constitutional requirements, the consent or acquiescence of the city in violating them will not give it a legal standing or change its attitude in the eyes of the law as a trespasser when it undertakes to invoke the aid of another section of the Constitution to compel another telephone company to transact business with it. The city authorities of Owensboro cannot, by consenting to the unlawful occupations of the streets of the city by the Kentucky & Indiana Telephone Company, invest it with legal rights that it is not entitled to, or give it a standing in court that can only be obtained by a compliance with the law. If a contrary rule were adopted, the effect of it would be that two wrongs would make a right, and to allow two parties, by their acquiescence in the nonobservance of the law, to clothe one of them

with rights and privileges conferred only upon persons who observe the law.

Our conclusion is that the judgment of the circuit court must be reversed, with directions to dismiss the petition.