## Union L. H. & P. Co. v. Young, et al.
## Silva v. Young, et al.

(Decided January 24, 1912.)

## Appeal from Campbell Circuit Court.

1. Natural Gas—Contract With City.—Under a contract between a Light company and a city by which the Light company agreed to furnish illuminating gas of 16 candle power, and fuel gas of 450 heat units to the cubic foot, and by which it was further agreed that no higher rate was to be paid in this city than in the city of Newport, is not broken by the company selling natural gas in Newport at a lower rate, the natural gas being less than 7 candle power and 1000 heat units to the cubic foot.

2. Definition of Terms Made.—Where a contract defines the terms it uses, the contract definition of the terms control.

MATT HEROLD for appellant.

HUBARD SCHWARTZ for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

In October, 1901, the city of Dayton entered into a contract with the Union Light, Heat and Power Company by which under a franchise granted it by the city, the company agreed to supply the city and its inhabitants with gas for a period of 20 years. At that time the power company was supplying the cities of Newport and Bellevue with gas, the former under a franchise expiring in 1907 and the latter under a franchise expiring in 1911. It also supplied the city of Covington with gas. Only artificial gas was then in use in these cities, but in the year 1909, natural gas was piped in from West Virginia. In 1905 a new franchise was granted to another company by the City of Newport for a term of 20 years for the supply of artificial gas at 70 cents per 1000 cubic feet. In March, 1910, the City of Newport granted a franchise to the power company for the supply of natural gas to the city at 30 cents net per 1000 cubic feet. Under the terms of the franchise, the company was authorized to transport natural gas through its pipes and mains and to cease furnishing artificial gas so long as the natural gas was supplied through the mains, and whenever the company was unable to furnish natural gas through its mains, under an arrangement between it and the other

company it was to again furnish artificial gas through its mains at 70 cents per 1000 cubic feet. The company began to supply consumers in newport with natural gas on August 1, 1910 at 30 cents net per 1000 cubic feet, but continued to furnish artificial gas to the consumers in Dayton and Bellevue, and charged consumers in Dayton the same rate as consumers of artificial gas in Bellevue, which was 75 cents net per 1000 cubic feet. In October, 1910, W. A. Young and a number of other citizens of Dayton, and the City of Dayton suing on behalf of all the gas consumers and the city, brought this action against the power company to compel it to supply them with artificial gas at the same rate it charged in the city of Newport for natural gas, and to require it to refund to them all they had paid for gas over and above 30 cents per 1000 cubic feet. An answer was filed by the company, voluminous proof was taken and on final hearing the Circuit Court entered a judgment in favor of the plaintiffs as prayed. From this judgment, the power company appeals. The court also ordered Albert Silva its secretary, to produce the books of the company so that the amount which had been overpaid according to the judgment might be ascertained. This he refused to do and appeals from this part of the judgment.

The question to be decided as we see it, turns simply on the proper construction of the written contract. The provisions of the contract so far as material are as follows:

"This agreement entered into this 9th day of September, 1901, by and between the city of Dayton, Kentucky, a municipal corporation under the laws of Kentucky, party of the first part, and the Union Light, Heat and Power Company, party of the second part, witnesseth:

Whereas, the Mayor and Board of Councilmen of the city of Dayton, passed a resolution calling for bids for the exclusive franchise of entering in and upon the streets and other public places of said city, to lay, maintain and operate a gas plant and system of pipes for supplying gas for light, heat, fuel and power purposes, to said city and the inhabitants thereof; * * *

3. The party of the second part agrees that it will furnish illuminating gas to consumers at one dollar and ten cents ($1.10) per thousand (1000) cubic feet; less ten cents discount per thousand cubic feet if paid in ten days

after due, and will furnish fuel gas to consumers at one dollar ($1.00) per thousand (1000) cubic feet, less twenty-five (25 per cent) per cent. discount if paid in ten days after due. All bids shall be payable on the first day of the month.

"5.   The illuminating gas supplied shall be maintained at not less than sixteen (16) candle power, and fuel gas, if conducted in separate mains, shall always be maintained at four hundred and fifty-two (452) heat units per cubic foot. The said company agrees to supply both illuminating gas and fuel gas through the same main, and furnish them through the same service pipes for both purposes but separate meters shall be used in determining the amount of each kind of gas consumed.

"8.   In the event that a lower rate shall be made by said party of the second part during the continuance of this franchise, to either Bellevue or Newport, for either illuminating or fuel gas, the price in the city of Dayton shall thereupon be made by said company the same as in said city or cities."

It will be observed that by the contract the illuminating gas supplied must be maintained at not less than 16 candle power and fuel gas  must be  maintained at 452 heat units per cubic foot.  It will also be observed that in the preamble to the  contract it is set  out that the franchise among other things included the power to lay, maintain and operate a gas plant and system of pipes. This provision in view of the fact that only  artificial gas was then in use in the vicinity, clearly  shows that the contract refers to artificial gas.  Natural gas according to the evidence has from five to seven candle power. It has 1000 heat units per cubic foot. It is very evident therefore that natural gas was not referred to in the contract.   The contract requires the power company to furnish gas of a certain candle power for illuminating purposes and of certain  heat units for fuel  purposes. The provision of the contract that it must not during the continuance of the franchise make a lower rate to either Bellevue or Newport for illuminating or fuel gas must be read in connection with the contracts which this company then had with those two cities, and when so read it is manifest that it refers to artificial gas having a sufficient lighting power to fill the contract or requisite heat units if used for fuel purposes. The city of Dayton can not be compelled under this contract to accept natural

gas in lieu of the gas contracted for. The obligation of the contract is mutual. The company having contracted to deliver a certain kind of gas at one price, cannot be required to deliver a different kind of gas at a different price under the contract, or to deliver artificial gas having the qualities required by the contract at the same price for which it delivers natural gas in Newport, the natural gas having very different qualities from the gas required by the contract. If the City of Dayton desires to substitute natural gas for artificial gas, it must do so either by agreement with the power company or by granting another franchise or making some such arrangement as the city of Newport made. The contract above quoted has no reference to natural gas. All its provisions are to be read together. Illuminating or fuel gas under Sections 8 of the contract is the gas referred to in the preceding sections of the contract.

The court can not make a new contract for the parties. It can only enforce the contract they have made, and this it must do according to the fair and natural meaning of the terms used. In construing a contract, the court will look to the circumstances surrounding the parties when it was made and will read the contract in the light of these circumstances. The object of all rules of construction of contracts is to ascertain what the parties meant and intended. There is no difference between the contracts of a municipality and other contracts as to the canons of construction. They must like all other contracts be given a reasonable construction, and where the terms used are defined by the contract itself, that definition must be followed. Here the terms "illuminating gas" and "fuel gas" are defined by the contract, and the preamble shows the company was to maintain a gas plant that is to manufacture the gas. To construe the contract as requiring the company to furnish this gas in Dayton at the price it furnishes natural gas under different conditions in Newport would be to give it a construction not within the intention of the parties when it was made or within the natural meaning of the terms used. (Bright v. Bacon, 131 Ky. 848, L. & B. S. R. R. v. Moore, 140 Ky. 517, Nance v. Patterson Bldg. Co., 140 Ky. 564, Cox v. Humphreys, 144 Ky. 395, Higgin Mfg. Co. v. Griesinger, 145 Ky. 1.)

We are therefore of opinion that the plaintiffs are not entitled to the relief sought in the petition, and on

the facts shown, the court should have dismissed the action.

Judgment reversed and cause remanded on each appeal for a judgment as above indicated.