## City of Campbellsville v. Taylor County Telephone Company.

(Decided June 4, 1929.)

O. B. BERTRAM for appellant.

J. R. SANDERS and JAMES & JAMES for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

This is a controversy between the city of Campbellsville and the Taylor County Telephone Company respecting telephone rates and service. The city was granted partial relief and has prosecuted the appeal. The telephone company has taken a cross-appeal, insisting that no relief whatever was justified by the facts.

In July, 1920, the telephone company, pursuant to section 164 of the Constitution, acquired a franchise from the city to construct, operate, and maintain, for a period of 20 years, a telephone system within the city of Campbellsville. A section of the franchise ordinance is as follows:

"Sec. 7. The purchaser, successors, or assigns, shall not charge more than the following rates:

"It is provided that the maximum rate to be charged for business phones during the first five years of the life of this franchise shall not exceed $3.00 per month for single line, magneto service, and $2.50 for two-party line, magneto service; residence phones during the same period of time shall be as follows:

"Single line, residence, shall not exceed two dollars per month.

"Two-party line, residence, shall not exceed one dollar and fifty cents per month.

"Four-party line, residence, shall not exceed one dollar and thirty-five cents per month.

"Five-party line, residence, shall not exceed one dollar and twenty-five cents per month.

"That at the expiration of the first said five years period, and every five years thereafter during the life of this franchise, a Commission composed of five persons shall be convened and fix the rates to be charged for all phone service under this franchise for the succeeding period of five years.

"That said Commission shall be composed of the Mayor of the city of Campbellsville and one other person selected by the Common Council of

said city, and two persons named by the telephone company, its successors or assigns, purchasing said franchise; then the four persons thus named shall select some citizen and tax-payer of the city of Campbellsville as the fifth member of the Commission. Provided, that in the event the four persons selected by the city and the purchaser of the franchise, its successors or assigns, cannot agree on the fifth member of said Commission, after considering the matter for a period of thirty days, the four Commissioners shall notify the City Council to that effect, in which case it shall be the duty of the City Council, by a majority vote of four of its said members, to select the fifth person to serve on said Commission.

"That the said Commission shall have the authority, by a majority vote, to either raise or lower the rates of rental said Company (the purchaser, its successors or assigns), shall charge for service during the succeeding five years, the maximum rate to be allowed to be as follows:

"Single line business phone, magneto service, not to exceed three dollars and fifty cents per month.

"Two-party line business phone, magneto service, not to exceed three dollars per month.

"Single line residence phone, magneto service, not to exceed three dollars per month.

"Two-party line residence phone, magneto service, not to exceed one dollar and seventy-five cents per month.

"Four-party line residence phone, magneto service, not to exceed one dollar and fifty cents per month.

"Five-party line residence phone, magneto service, not to exceed one dollar and thirty-five cents per month.

"That the minimum rental said purchaser, its successors or assigns, shall charge for service during the succeeding five years shall be as follows:

"Single line business phone, magneto service, not less than two dollars and fifty cents per month.

"Two-party line business phone, magneto service, not less than two dollars and twenty-five cents per month.

"Two-party line residence phone, magneto service, not less than one dollar and thirty-five cents per month.

"Four-party line residence phone, magneto service, not less than one dollar and twenty-five cents per month. .

"Five-party line residence phone, magneto service, not less than one dollar per month."

The telephone company is operating under the franchise. At the expiration of the first five years, no steps were taken to fix new rentals, and the service was continued without interruption or alteration of the rates. The rates fixed in the franchise ordinance continue until changed in the manner provided by section 7, or by mutual agreement. A change might be made at any time in accordance with section 7, if the rates had been in force for as long as five years. On November 1, 1927, the city council adopted a resolution, referring to the terms of the franchise, and reciting that the telephone company desired to improve its service by installing what is known as the "flash-light system," necessitating a new schedule of rates, and J. C. Durham was appointed to act for the city in conjunction with the mayor on a rate adjustment committee. The resolution directed that the committee be constituted in accordance with section 7, supra, of the franchise ordinance, "which committee, after thorough investigation of the needs and respective rights of the city and said telephone company, shall make a report of their findings in writing to this body." At an adjourned meeting held ten days later a report was presented by the committee, signed by all five members, which petitioned the city council to pass a proper resolution or ordinance granting the telephone company the right to establish the new rates therein recommended. The report indicates that the committee did not consider itself authorized to fix the rates for the ensuing five years. It did not attempt to do so. The report shows rather that a different situation was contemplated and that some new legislation or agreement was thought necessary. The telephone company contends that an amendatory ordinance was then adopted by the city council. The averment in the answer of the telephone company that the amendatory ordinance was adopted is denied and no certified copy of the ordinance appears in the record. Neither is there a certified copy of the minutes of the council showing the adoption of the ordinance. It is contended that the ordinance was not adopted and the purported copies of the proceedings filed in the record indicate that the matter was discussed at various times and

finally ended without action being taken. The subsequent efforts of the telephone company to secure adoption of the ordinance is incompatible with the position that it had been adopted. Whether the ordinance was actually adopted the present record is insufficient to show, but it points plainly the other way.

It seems that the telephone company made a change from the magneto to the flash-light system and was threatening to do away with the magneto service. The city then instituted this action to enjoin the telephone company from demanding or collecting any charges except those fixed by the franchise ordinance, and to restrain it from discontinuing service to any of its subscribers in the city on account of their refusal to pay in excess of such rates and to compel the company to restore any service discontinued upon that ground. A temporary restraining order was issued as requested, and upon final hearing the circuit court enjoined the telephone company from charging for magneto telephone service any rate greater than the franchise fixed, and also enjoined it from refusing to furnish citizens of the city magneto service, when applied for, at the rates so fixed. The court refused to require free service by the telephone company outside of the city and made no order concerning the flash-light service, thus leaving the telephone company free of present restraint respecting that character of service. The city contends that the injunction should have been broad enough to require all service rendered by the telephone company, regardless of its character or name, to be furnished at the franchise rates, and, further, that it should have been compelled to supply its patrons free service to country places served by its system. The telephone company, on its cross-appeal, insists that no relief should have been granted to the city on the ground that the franchise was so amended as to authorize it to install the new service at the new rates and to discontinue the old service. A number of interesting questions are discussed in the briefs, which are not presented by the record.

The record, however, fairly raises two questions, and they are: (1) The right of the city to require telephone service outside the corporate limits; and (2) the right of the telephone company to furnish the flash-light service to those who are willing to pay for it, so long as it performs the obligations of the franchise by furnishing the magneto service without discrimination and at the

franchise rates. The city contends that the franchise ordinance required the telephone company to furnish its subscribers country service the same as that rendered within the city. We are unable to find any provisions of the franchise susceptible to that construction, or referring to that subject, and none is pointed out. The argument is predicated upon testimony to the effect that such was the understanding of the witnesses when the franchise was granted. The ordinance is plain and unambiguous and affords no basis for the belief that it contemplated or compelled any service not specified by its terms, which may not be enlarged by parol evidence. Citizens' Tel. Co. v. City of Newport, 188 Ky. 629, 224 S. W. 187, 14 A. L. R. 1369.

Realizing this palpable fact, the city contends that the franchise ordinance of July, 1920, should be reformed to correspond with the understanding on the ground that such provision was omitted from the franchise ordinance by mutual mistake or by mistake on the part of the city and fraud on the part of the telephone company. We recognize the right of a court of equity to reform a written contract upon the ground of mutual mistake of the parties, or of a mistake upon one side and fraud or inequitable conduct upon the other (23 R. C. L. sec. 22, p. 331; 34 Cyc. 904, 920) ; but there must have been a pre-existing agreement of the parties covering the subject-matter (23 R. C. L. p. 310. sec. 3), which agreement the writing failed to express, and which failure was due to a mutual mistake of the parties, or to a mistake of one of the parties and fraud or inequitable conduct of the other (34 Cyc. 907). We are not now required to decide whether legislative proceedings like a city ordinance granting a franchise may be the subject of such reformation (23 R. C. L. sec. 7, p. 313; 34 Cyc. 933 et seq.; Moffett, etc., v. Rochester, 178 U. S. 384, 20 S. Ct. 957, 44 L. Ed. 1109), as the pleading in this case does not measure up to the requirements of the rule (23 R. C. L. sec. 57, p. 360; 34 Cyc. 970, et seq.), and, if it did, the requisite quantum and quality of proof is lacking (Ison v. Sanders, 163 Ky. 605, 174 S. W. 505; Howland v. Blake, 97 U. S. 624, 24 L. Ed. 1027; Moffett, et al. v. Rochester, 178 U. S. 384, 20 S. Ct. 957, 44 L. Ed. 1109; Insurance Co. v. Evans, 17 S. W. (2d) 711, 229 Ky. 613, decided May 21, 1929). The fact that free country service was rendered for a time imposed no obligation upon the telephone company to continue it. Citizens' Tel. Co. v. City of Newport, 188 Ky. 629, 224 S.

W. 187, 14 A. L. R. 1369; Rural Home Tel. Co. v. Ky. & Indiana Tel. Co., 128 Ky. 209, 107 S. W. 787, 32 Ky. Law Rep. 1068; Cumberland Tel. & Tel. Co. v. City of Hickman, 129 Ky. 220, 111 S. W. 311, 33 Ky. Law Rep. 730. It is clear that the court was correct in its conclusion, that the telephone company was under no legal obligation to supply free service outside the city.

It is further argued for the city that the franchise must be construed to embrace all service furnished by the telephone company and that the subscribers are entitled to the improved or flash-light service on the same terms specified by the franchise ordinance for the magneto service. We are not prepared to say that the telephone company, under a franchise like the one here involved, is precluded from making an extra charge for an additional or improved service desired by the subscriber. So long as the telephone service required by the franchise is supplied at the rates fixed, the city is not concerned that a more expensive service may be rendered those willing to pay for it. It was proper for the franchise to provide the conditions under which, and the rates for which, the service should be rendered. Moberly v. Richmond Tel. Co., 126 Ky. 369, 103 S. W. 714, 31 Ky. Law Rep. 783; Christian-Todd Tel. Co. v. Com., 156 Ky. 557, 161 S. W. 543; City of Louisville v. Louisville Home Tel. Co., 149 Ky. 239, 148 S. W. 13, Ann. Cas. 1914A, 1240.

The judgment of the circuit court compels performance by the telephone company of its franchise obligations, and so long as that is done, the city has no ground of complaint. Discrimination is not allowed (Williams v. Maysville Tel. Co., 119 Ky. 33, 82 S. W. 995, 26 Ky. Law Rep. 945; Marion E. L. & I. Co. v. Rochester, 149 Ky. 810, 149 S. W. 977); but it is no discrimination for the telephone company to provide extra facilities for extra pay so long as all subscribers under the same conditions are treated alike and the franchise obligations are performed. (Union L. H. & P. Co. v. Young, 146 Ky. 430, 142 S. W. 692).

On the cross-appeal by the telephone company it is urged that the magneto service may be discontinued and all subscribers required to accept the flash-light service at the higher rates. The basis of this contention is that an amendatory ordinance was adopted by the council which operated to modify the franchise by mutual consent (Lutes v. Fayette Home Tel. Co., 155 Ky. 555, 160

S. W. 179; Johnson County Gas Co. v. Stafford, 198 Ky. 208, 248 S. W. 515); but, as has been stated, this record does not show that the amendatory ordinance was adopted, and the question is not presented. The proceedings of the council show that, after much dickering upon the subject, it was dismissed from further consideration.

We are thus brought to the conclusion that the circuit court correctly disposed of the case on the record before it.

The judgment is affirmed on the appeal and on the cross-appeal.