## LOUISVILLE & JEFFERSON COUNTY METROPOLITAN SEWER DIST. v. GENERAL DISTILLERS CORP. OF KENTUCKY et al.

Court of Appeals of Kentucky.

March 20, 1953.

Rehearing Denied May 22, 1953.

Blakey Helm, Louisville, for appellant.

Carl K. Helman and Morris & Garlove, Louisville, for appellees.

STANLEY, Commissioner.

The General Distillers Corporation of Kentucky instituted the suit against Louisville & Jefferson County Metropolitan Sewer District and the Louisville Water Company, asserting the right without charge to dispose of water obtained from its own wells and used in its distilling operations into an interceptor sewer under the management of the Sewer District. It alleged the District was denying such right and threatening to have its water service discontinued by the Water Company. The Sewer District may compel payment of sewer charges by that method. The plaintiff prayed a declaration of rights in respect to the controversy and for an injunction prohibiting the threatened action of the defendants. The District joined issue and sought recovery by counterclaim of $9,553 for past due charges. Judgment went for the plaintiff and the Sewer District appeals.

The appellee has moved that the appeal be dismissed because it was not perfected within sixty days after final judgment. The material aspects of the pleading and practice, which in reality converted the case into an ordinary suit in equity, are not substantially different from those in Bowles v. Stilley's Ex'r, Ky., 254 S.W.2d 504. Upon authority of that opinion the motion to dismiss is overruled.

The judgment rests on what the court found was the real consideration for Distillers Corporation's deeds granting to the Commissioners of Sewerage of Louisville (to be referred to as Sewerage Commissioners), predecessor of the Sewer District, perpetual easements for the construction and maintenance of an interceptor sewer through the distillery property. Each deed recites the easement is granted "for a valuable consideration and one dollar cash." The Distillers Corporation contends three documents evidencing the contract do not describe the entire consideration and agreement. Its president testified he had had several conferences with representatives of the Sewerage Commissioners and certain oral agreements were made, which combined establish the consideration to have primarily been the free use of the sewer for the waste water from all of its property and operations.

The judgment rests upon Bond Brothers v. Louisville & Jefferson County Metropolitan Sewer Dist., 307 Ky. 689, 211 S.W.2d 867. The question in the present case is

resolved into one of proof of similar consideration for the free use of the interceptor sewer.

There are material differences between the cases. In the Bond Brothers case the right was evidenced by a judgment in a condemnation proceeding and the legal issue was confined to the interpretation of the judgment and an incorporated agreed written settlement of the pending litigation. Here the claim of Distillers Corporation rests upon parol testimony enlarging the terms of written instruments, particularly an oral contractual commitment of a municipal corporation by its agents. The factual situations are different. In the Bond Brothers case the property owner had a satisfactory way of disposing of its waste waters through a natural stream, which had been taken away from it by the Sewerage Commissioners by condemnation. Here the Distillers Corporation was preparing to reopen its plant after having had it closed by constitutional and statutory prohibition and it and the Sewerage Commissioners both were confronted with a serious problem of disposing of its waste waters, the emptying of it into Beargrass Creek having been unsanitary and unsatisfactory to everybody. And in respect to the matter of an intention to grant free use of the sewerage facilities, the situation was materially different. Bond Brothers' property was located outside the city limits, and it had been the policy of the city and its officers, and later of the Sewerage Commissioners, to exact payment from outside industries for the use of the city sewers, but no charges had ever been made against Bond Brothers after the building of the sewer through its property. Here the defendant's plant was within the city limits, and all property owners therein were then, and continued to be for more than ten years, until 1946, entitled to use the entire city sewer system without special charge. These differences have a bearing in the interpretation of the instruments evidencing the present right and liability.

The distillery, located in the northeast section of Louisville, borders on Beargrass Creek, which at this point was ordinarily almost a stagnant stream, flowing northwardly. The property is divided by Mellwood Avenue, approximately a north and south street, so that a substantial area upon which distillery warehouses are located lies west of and between the avenue and the creek. The right-of-way for the interceptor sewer is through this parcel between a high bank and the creek and parallel thereto. The other part of the property, upon which the distillery and larger part of the plant, including its private water wells, are located, is east of Mellwood Avenue and abuts a public alley on the other side. The Sewer District has recognized the Distillers Corporation's right to empty its water (as described in the writings) from the portion of the property west of Mellwood Avenue, which, as stated, is the part through which the interceptor sewer runs. But there is in fact little or no such water from there. The manufacturing facilities and the wells are on the eastern parcel.

We look to the documentary evidence.

On November 8, 1935, the Sewerage Commissioners made the following order as shown by its minutes:

"Mr. Caye informed the Commissioner that it was necessary to secure a right-of-way through the property of Carl Nussbaum and the General Distillers Corporation of Kentucky, between Mellwood Avenue and Brownsboro Road, and Frankfort Avenue and Brownsboro Road, in order to construct the Mellwood Avenue Intercepter, and that the above mentioned parties were willing to give this easement to the Sewer Commission provided they would agree to construct a sewer in the alley between Mellwood Avenue and William Street, which latter sewer is badly needed, and this construction is recommended. Upon motion by Judge Dietzman, seconded by Mr. Rasch and unanimously carried, it was agreed to construct the sewer in the alley between Mellwood Avenue and William Street, provided the necessary signatures were obtained for the easement, and as soon as this easement was properly executed the engineering depart-

ment was instructed to construct the sewer with day labor forces, as it is a small project."

It is to be observed that the *sole commitment* of the Commissioners was to construct a sewer in the alley as the consideration for the easement of a right-of-way for the interceptor sewer through the distillery property and that of Carl Nussbaum adjoining.

On November 12, 1935, Mr. Caye, the Chief Engineer of the Commissioners, addressed a letter to Distillers Corporation, referring to the information received from J. C. Ivins, who had been obtaining rights-of-way, that the Distillers Corporation would execute deeds for the easement for the proposed interceptor sewer—

"if the Commissioners of Sewerage will construct a sewer in the alley between Mellwood Avenue and Williams Street from the southerly end to Brownsboro Road, it being understood this alley sewer, as well as the Interceptor construction, will be done at the expense of the Commissioners of Sewerage and there shall be placed in the alley sewer inlets or wye branches to which you may connect portions of your property easterly of Mellwood Avenue at such times as you desire, which connections to the alley sewer shall be at your expense. Also appropriate inlets or wye branches shall be placed in the Mellwood Avenue Intercepter to which you may likewise connect your property westerly of Mellwood Avenue. However, it is understood in connecting to the Intercepter only dry weather or sanitary sewage shall be discharged into it. This excludes rain water from roofs or other surfaces which latter sewage shall not be discharged into the Intercepter. In this respect rain water and dry weather sewage both may be discharged into an alley sewer."

The letter advises the Distillers Corporation that the Commissioners of Sewerage at its meeting on November 8 had agreed "to the above conditions and to construct the alley sewer according to these conditions if you will execute the deeds of ease-

ment and obtain the other necessary signatures of these deeds of easement, it being further understood the Commission is liable only for paying for the construction costs of the two sewers.'"

It is to be observed the letter contained more than the minutes of the Sewerage Commissioners. Much of it may be regarded as within the scope of the Chief Engineer's authority. It expressly refers to connecting the distillery property "easterly of Mellwood Avenue" with the alley sewer and to provisions for connecting "your property westerly of Mellwood Avenue" with the interceptor sewer for the discharge of "only dry weather or sanitary sewage." This was not contained in the minutes. The directors of Distillers Corporation adopted a resolution describing the proposition of the Commissioners of Sewers to be that "in consideration of the corporation granting them an easement for the building of the Mellwood Intercepter sewer * * * to construct a sewer in the alley east of the plant without cost to the corporation." The Board then authorized its President, Walter L. Borgerding, to execute the necessary deeds to the right-of-way as specifically described in the resolution. It is to be noted that here also the consideration is described as being only the construction of the sewer in the alley. This resolution was adopted after conferences between Mr. Borgerding and Messrs. Caye and Ivins, representing the Commissioners of Sewerage, following receipt of Caye's letter. A few days later the two deeds were executed.

We turn now to the parol proof.

Mr. Borgerding testified that Mr. Caye's letter was not satisfactory and he had several conferences with him and Ivins and perhaps another unidentified representative of the Sewerage Commissioners with regard to clarifying some indefinite provisions in relation to the construction of the interceptor sewer, the connections, the disposition of rain water, etc. Especially had he insisted that his company was interested primarily in having the use of both sewers. He testified that the "important thing" that went into the consideration for the easement was the use of both sewers for the entire

plant. Both Caye and Iyins were dead when he testified.

■ The testimony is of doubtful competency. KRS 371.030, with its broad and liberal interpretation, permits parol proof that the true or real consideration for a written contract was different from that recited. Broad as that authority is, it does not make inapplicable the law which disqualifies a witness having a pecuniary adverse interest, which includes a stockholder, from testifying concerning a verbal statement of or transaction with one who is dead when the testimony is offered. Section 606, subd. 2, Civil Code of Practice; Head v. Head, 293 Ky. 371, 169 S.W.2d 25; Bagby's Adm'r v. American Surety Co., 161 Ky. 78, 170 S.W. 492. The appellee contends for the competency of the testimony as being of declarations of deceased persons within the scope of their authority and as part of the res gestae. It is not necessary that we definitely pass upon the point; nor upon the controversial question of the competency of extrinsic parol evidence which goes to the entirety of the contract, contradicts the documentary evidence of the real consideration and imposes upon one party an additional executory obligation rather than merely proving an executed consideration or some act performed or service rendered. See 32 C.J.S., Evidence, § 958; Castleman-Blakemore Co. v. Pickrell & Craig Co., 163 Ky. 750, 174 S.W. 749; Apple v. McCullough, 239 Ky. 74, 38 S.W.2d 955.

■ But it cannot be questioned that the statute may not be used to nullify the elementary law that a public or municipal corporation, such as was the Sewerage Commissioners, can speak only through its formal records and that such constitute the only legal evidence of all that was done and that nothing more was done. City of Campbellsville v. Taylor County Telephone Co., 229 Ky. 843, 18 S.W.2d 305; Western Union Telephone Co. v. Guard, 283 Ky. 187, 139 S.W.2d 722; Dance v. Board of Education of City of Middlesboro, 296 Ky. 67, 176 S.W.2d 90. To accept this testimony, uncontradicted as it is, would require a judgment that the public body was bound to perform what an unauthorized agent promised to do.

■ If, however, the terms recited in the Caye letter which exceed those contained in the minutes of the Sewerage Commissioners and of the directors of Distillers Corporation (that the consideration for the easement was the construction of the sewer in the alley) were within the scope of the Chief Engineer's authority, those terms were in their pertinent part that "appropriate inlets or wye branches" would be placed in the interceptor sewer for the company's connection of its property "westerly of Mellwood Avenue." Nothing is said about the property east of the avenue. Nor is there anything said about free use thereof. It is not surprising that all of these writings, as indeed is the incompetent testimony of Mr. Borgerding, are silent as to any exemption from payment for using either the alley or the interceptor sewer. As stated heretofore, this was a right which all owners of property within the city then had. It seems manifest that neither party to this transaction had in mind such exemption. Neither contemplated the future imposition of such charges under special authority of the General Assembly of the state enacted ten years thereafter—no more so than other property holders who throughout many years had been making connections with the city sewer system. This is the complete and ultimate reason why such exemption was not the real or even part of the consideration for the easements.

Accordingly, the judgment is reversed, with directions to award judgment consistent with this opinion.