## Christian-Todd Telephone Company v. Commonwealth, for Use, et al.

(Decided December 19, 1913).

### Appeal from Christian Circuit Court.

1. Roads—Control of by Fiscal Courts.—By Section 4306, Kentucky Statutes, the Legislature has given the Fiscal Court of each county absolute control of the public roads thereof. Although the title to the ground occupied by the public roads remains in the adjacent landowners, subject to the public use, and the possession of the ground would revert to them upon their abandonment as public roads, the statute, supra, vests in the fiscal courts a property right in and to the public roads themselves for the use of the people of the county and general public, of which property right they cannot be deprived, without express legislative authority.

2. Telephone Companies—How May Acquire Right to Erect Poles and Wires on a Public Road.—Section 4679b, Kentucky Statutes, provides that a telephone company may, upon making just compensation therefor, obtain the right to erect and maintain its poles and wires upon the public roads of a county, but to do so, it must first obtain the consent of its fiscal court by the purchase from it of a franchise for that purpose, as provided by section 164 Constitution; in purchasing and paying for which, it compensates the county for the use it makes of its public roads, as required by the statute.

3. Franchises—How the Fiscal Court May Be Compelled to Grant Same—Mandamus.—If a fiscal court arbitrarily refuses to grant a telephone company the right to occupy the public roads of the county with its poles and wires, the latter may, by mandamus compel it to offer such a franchise for sale as provided by Section 164 Constitution.

4. Franchises—Grant of—Reasonable Regulations as to Rates, etc.,—In granting a franchise to a telephone company, the fiscal court may make it provide how and in what manner the poles and wires of the company shall be erected and maintained on the public roads; and, in addition, prescribe reasonable regulations as to the rates to be charged by it in the exercise of the rights conferred by the franchise.

ALEX. P. HUMPHREY, HUNT CHIPLEY, HUNTER, WOOD & SON, WM. L. GRANBERRY and HUMPHREY, MIDDLETON & HUMPHREY for appellant.

JOHN C. DUFFY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Overruling motion to dissolve injunction.

This case is before us on a motion of the Christian-Todd Telephone Company to dissolve an injunction granted by the circuit court whereby it is prevented from maintaining, operating or constructing its telephone poles and lines upon or across the public roads of Christian County and required to remove them therefrom. The facts out of which the controversy arose are admitted, and they as fully appear from the record, as if presented by proof.

The single question to be decided is, has the telephone company the right to occupy the public roads of Christian county, with its poles and wires, without a franchise? It is insisted for the county that, under the constitution and statutes of the State, the telephone company, in order to entitle it to occupy with its poles and lines the public roads of the county, must first obtain, by purchase, from the fiscal court a franchise. On the other hand, it is conceded by the telephone company that the fiscal court has the power and authority to reasonably designate where, and the manner in which, its poles and wires shall be located upon and across the public roads; but it denies the right of the fiscal court to absolutely exclude its poles and wires from the public roads unless, and until, a franchise has been secured for such use from the fiscal court.

In order that the situation anterior to the issuance of the injunction may be understood, it should be stated that the Christian-Todd Telephone Company was formed by a merger or consolidation of the Cumberland Telephone & Telegraph Company, the Hopkinsville Home Telephone Company and the Pembroke Home Telephone Company. None of these constituent companies ever obtained or owned a franchise to occupy the highways of Christian County with its poles or wires. One of them, the Hopkinsville Home Telephone Company, did, however, prior to the merger, procure of the fiscal court a permit to erect its poles and lines in the highways under certain regulations set forth in an order of that court; but for this permit no consideration was paid, and it was revoked by the fiscal court after the consolidation of the three telephone companies.

On January 7, 1913, at a regular term of the fiscal court of Christian County, the following order was entered:

"Whereas, the Cumberland Telephone Company, the Hopkinsville Home Telephone Company and the Pembroke Home Telephone Company, each formerly doing a telephone business in this county and recently consolidated under the name of the Christian-Todd Telephone Company have each and all failed and refused to remove their poles outside of those portions of the roads used by the public for travel and outside of the valleys and ditches along said roads, so as not to interfere with the maintenance and repair of said public roads at various places, when ordered to do so by this court and the officers of this county; and whereas, the said consolidation of the said telephone companies using and occupying the public roads of Christian County and the rights of way thereof have been followed by advance in the rates charged for the service on said lines so using and occupying same, and discrimination in the rates charged to various patrons along the said public roads of this county outside of incorporated cities and towns. It is, therefore, ordered by this court that any permission, privilege or consent, if any, heretofore granted or given by this court to either of said telephone companies to use the public roads of this county or any part of the rights of way thereof, or to occupy the same with their poles and wires in the telephone business is hereby revoked, recalled and set aside and held to be void and no longer binding on this court. And it is further ordered that a franchise to use, operate and maintain telephone lines along and across the public roads of this county and along the rights of way thereof, be sold by this court at public outcry to the highest and best bidder, to erect and maintain a system of telephone poles and wires along the public roads of this county and the rights of way thereof for a period of twenty years from the date of sale and purchase of same, with such restrictions and regulations as to the place of erection, maintenance and operation of same along said public roads and rights of way thereof, and providing free service through this county fixing rates to be charged therefor, with such other regulations and restrictions as to prevent discrimination, etc., as this court may deem reasonable and just. And it is further ordered that the county attorney prepare and submit such a franchise for the consideration of this court at its next meeting and to be sold as heretofore

ordered. The said telephone company, all other persons and the public are invited to have representatives before this court at its next meeting to discuss the said franchise, its regulations and restrictions as to rates, etc. And this cause is continued for such purpose to the next term of court."

Upon receiving notice of this order the Christian-Todd Telephone Company, by a written communication addressed to the fiscal court, recognized its right to have changed such telephone poles as might be found to obstruct the highways, expressed its willingness to change the location of same and to pay the expense of so doing, and requested the fiscal court to appoint a representative to go over the highways with a like representative of the telephone company and designate such changes in the location of the telephone company's poles and wires as might be deemed necessary, but the request contained in the communication was not complied with by the fiscal court. Shortly after the entering of the order of January 7, 1913, a telephone franchise, after due advertisement, was offered for sale at public auction by the fiscal court, but neither the Christian-Todd Telephone Company nor any other telephone company appeared at the time and place of sale, or made a bid for the franchise. In March following, this action was brought by order of the fiscal court, and the injunction prayed therein against the Christian-Todd Telephone Company was granted by the circuit court, after hearing the evidence introduced by the parties for and against its issuance.

It is manifest that the bone of contention in this case is the attempt of the fiscal court to restrict the power of the Christian-Todd Telephone Company, resulting from its absorption of all other competing telephone companies in Christian County, in the matter of increasing the charges for the use of its lines by the public, to an unreasonable or exorbitant extent; for, if the fiscal court can compel the telephone company to purchase a franchise, as a condition precedent, to its use of the public roads of the county by its poles and lines, it can, by the terms of the franchise, impose such reasonable regulations as to rates, as will protect the public against the monopoly the latter seems to have acquired. It is equally patent that the telephone company has not been deterred from obtaining the franchise on account of its cost, which, in view of its advantage over other telephone com-

panies from being already in possession of the highways, would be insignificant, but because of the restrictions the franchise would impose upon its business in the matter of regulating rates.

We understand the authorities to be in accord in holding that the power to grant a franchise carries with it the power to impose such reasonable regulations as to its exercise as will effectuate the purposes for which it is granted.    This is necessarily so, because a grant of a franchise being in the nature of a vested right of property, it is subject to the performance of conditions and duties on the part of the grantee.    The following excerpt from the opinion in Moberly v. Richmond Telephone Co., 126 Ky., 369, will illustrate our meaning:  "The city may annex any lawful condition to the exercise of the franchise, which becomes a part of the contract under which it is thenceforth used. And we think it was competent for the city to provide, as a condition of the franchise, that that the rates to citizens should not exceed the schedule fixed in the ordinance, or any future ordinance."

To the same effect is City of Louisville v. Louisville Home Telephone Co., 149 Ky., 234.   In the opinion, in quoting from Joyce on Franchises, section 342, it is said: "So it is declared that it has never been doubted that the legislative authority, in making a grant of a corporate franchise, can prescribe such terms and such conditions for its acceptance and for its enjoyment as it shall deem best, not inconsistent with constitutional limitations. The manner of enjoying the franchise, its life, its scope, are all subjects of legislative control.   In section 348 it is further said:  "If a city grant a franchise to a corporation for a term authorized by law,   and   the conditions thereof are accepted, the same constitutes a contract between the parties, the violation of which is the subject of litigation in an ordinary proceeding."   Chicago General Ry. Co. v. City of Chicago, 66 L. R. A., 959.

We now come to the consideration of the primary question:  Must the Christian-Todd Telephone Company obtain of the fiscal court of Christian county a franchise, to entitle it to occupy, with its poles and lines, the public roads of the county?  It is insisted for the telephone company that the fiscal court is without power to grant such a franchise, and that the legislature,  by  section 4679b, Kentucky Statutes, has granted to telephone companies the use of the highways, outside  of  cities  and towns, subject only to the power in the fiscal court to

prescribe certain police regulations in the matter of designating where and how the poles and lines shall be located. It is undoubtedly true that the legislature may, except as restrained by the constitution, assume or regain control and supervision, in whole or in part, of the public roads of the State. And it is likewise true that such power may be delegated by the legislature to a subdivision of the State, or governmental instrumentality like the fiscal court, if there be nothing in the constitution to prevent it. But, does section 4679b give the telephone company the independent right to occupy the public roads of Christian county with its poles and wires, subject only to police regulation by the fiscal court as to where and how they shall be placed? That section provides: "That any telephone company chartered and incorporated under the laws of this or any other State, partnership or individual, shall *upon making just compensation as hereinafter provided,* have the right to construct, maintain and operate telephone lines through any public lands of this State and on and across and along the public roads and turnpikes, and across and under any navigable waters, and on and across the land of any person; provided, that fixtures of said company shall not interfere with the travel on or along said roads nor obstruct the navigation of said waters. If such telephone company, partnership, or individual, cannot obtain the right of way by contract, companies, partnerships or individuals may proceed to institute condemnation proceedings to obtain the desired right of way, which proceedings shall be substantially the same as are provided in chapter 125a (section 4679a, Kentucky Statutes), in respect to proceedings to acquire the right of way for telegraph companies. The provisions of this act shall not apply to any incorporated town or city."

The provisions of this section are much like those of section 4679a with respect to telegraph companies; practically the only difference being that by the latter section telegraph companies are given the right to condemn railroad rights of way, but not the property of individuals. On the other hand, telephone companies are given the right to condemn the property of individuals, but are not given the right to condemn railroad rights of way. In this connection, section 4306, Kentucky Statutes, should also be considered. It provides: "The fiscal court of each county shall have general charge and supervision of the public roads and bridges therein, and shall pre-

scribe necessary rules and regulations for repairing and keeping same in order, and have the proper management of all roads and bridges in such county under and subject to the provisions of this act. The public roads shall be maintained either by taxation or by hands allotted to work thereon (or both) in the discretion of the fiscal court of the respective counties as hereinafter provided.''

Properly speaking, the title to the ground occupied by a public road remains in the adjacent land owners, subject to the public use, to whom the possession would revert if the road should be abandoned. So, it would not be wide of the mark to say that the control of the public roads given the fiscal courts by section 4306 is a property right for the use of the counties and the public, of which they cannot be deprived without their consent, except by express legislative authority.

In our opinion, the right claimed for the telephone company is not to be found in section 4679b. The right it confers upon any telephone company to construct, maintain and operate its telephone lines through ''any public lands of this State on and across and along all public roads and turnpikes, and across and under any navigable waters and on and across the land of any person'' is predicated upon its first making just compensation for the use to be made of same. In the event such compensation cannot be agreed upon, the condemnation proceedings provided for in the section must, where applicable, be resorted to by the telephone company. And if it be true, as insisted for the telephone company, that such condemnation proceedings can only apply as to the making of compensation to a private individual for the use to be made of his land by the telephone company's poles and wires, that fact would not relieve the company of the necessity of compensating the State and the county to which such condemnation proceedings may not apply, for the use of the lands of the former and the public roads of the latter, in the erection and maintenance of its poles and wires. The requirement of the section is that, in any event, just compensation must be made for the use the telephone company makes of the property of others, unless the right to such compensation be relinquished, which, so far as the fiscal court is concerned, cannot be done.

Its consent to the use of the public roads of the county by the poles and wires of a telephone company can be given only by the granting of a franchise; and as the

franchise must be sold, the compensation which the section, *supra*, requires the telephone company to pay the fiscal court for its use of the public roads of the county is derived through the sale of the franchise, which must be made at public auction and after due advertisement, to the highest and best bidder. All this is provided for and required by section 164 of the constitution, which declares: "No *county*, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same ·to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway."

We may, for the purposes at hand, concede the correctness of the contention made by counsel for the telephone company, that section 4679b, Kentucky Statutes, does not contemplate condemnation proceedings against the State in obtaining the right to erect poles and lines upon or over public lands owned by it; and likewise that condemnation proceedings will not lie against the county or fiscal court in obtaining the right to occupy the public roads of the county with its poles and lines; yet, these facts, as previously intimated, do not relieve the telephone company of the necessity of compensating them for the use to which it would put the lands of the one or the highways of the other. The State cannot be sued without legislative authority; and if the statute has given no means of compelling the State by grant to yield to a telephone company the right to construct and maintain its poles and lines over its public lands, legislative action must be invoked for a remedy, which would secure to the telephone company the necessary use of the lands, and, at the same time, fairly compensate the State therefor.

It cannot be said, however, that the failure of section 4679b to provide a method whereby a fiscal court, in case of its arbitrary refusal to act, may be compelled to grant to a telephone company the use of the public roads of the county for the erection, maintenance and operation of its poles and lines, or that its failure to provide a method for ascertaining what compensation shall be paid the fiscal court for such use of the public roads by

the telephone company, would leave the latter without a remedy.

If a fiscal court should be notified by a telephone company, prepared to do business in the county, of its wish to acquire a franchise authorizing the use by it of the public roads of the county for the erection and maintenance of the poles and lines necessary to the conduct of its business, and the fiscal court should refuse to offer for sale, as provided by section 164 of the constitution, such a franchise, the telephone company could, by the writ of mandamus, compel it to do so. This remedy is provided by section 474 of the civil code and has been held by this court applicable to such a state of case as that here presented. In Louisville Home Telephone Co. v. City of Louisville, 130 Ky., 611, this writ was employed to compel the sale by the Board of Public Works of the City of Louisville of a telephone franchise, at the suit of certain private citizens and taxpayers. Among other matters, urged in resistance to the granting of the writ, was the contention that the plaintiffs in the court below had no right to maintain the action because of their having no direct and special interest in the matter in litigation. In rejecting this ground of defense, we said: ''However, as has been said, the appellants contend that, even if they have not the requisite mere private right to entitle them to the writ sought in this proceeding, they, being citizens and residents of and engaged in business in the city, and as such interested in the execution of the law, have the right as relators to bring the matter before the court. Clearly the ordinance exhibited with the petition imposes upon the board of public works of the city of Louisville the duty of advertising and selling at public sale the telephone franchise: in the ordinance provided. In this day efficient telephone service is so essential not only to the conduct of private business in the cities, as well as in the rural districts, but is also so important in the management and conduct of the business and government of cities, that its proper installation, maintenance and service constitute a matter of decided public interest. The question in this case is therefore one of public right, and the object is the enforcement of public duty. And, as we have seen from the authorities quoted *supra,* in such state of case a relator in a mandamus proceeding need not show that he has any special interest in the result, but it is sufficient for him to show that he is a citizen and resident, and en-

gaged in business in the city, and as such interested in
the execution of the law, and that, inasmuch as the pub-
lic duty here sought to be enforced is not one due to the
State in its sovereign capacity, the decided preponder-
ance of American authority is that private citizens may
move for a mandamus to enforce such public duty.''

If private citizens, situated as were the plaintiffs in
the case *supra,* had the right to a writ of mandamus to
compel the city authorities to offer for sale a franchise,
a much stronger reason exists for holding that it may be
so employed by an intending purchaser of the franchise.
As previously stated, by section 4306 the fiscal court is
given absolute control of the public roads of the county.
The authority it confers is in no sense abrogated or
lessened by section 4679a or by section 4679b, and the
rights conferred upon telephone companies by sec-
tion 4679b; as well as the duties it imposes upon the fis-
cal court, are subject to the power of absolute control
given that court by section 4306. Bevis v. Vanceburg
Telephone Co. &c., 121 Ky., 177.

In order to fully understand the legislative intent
with respect to the powers of fiscal courts over the pub-
lic roads of the county and the rights of telephone com-
panies with respect to their use, sections 4306 and
4679b must be read together, and the two in connection
with section 164, constitution. Thus considered, it is
manifest that they confer upon telephone companies the
right, with the consent of the fiscal courts, to occupy with
their poles and wires the public roads of the counties,
provided they make just compensation for such use; and
that their fixtures do not interfere with the travel on
and along the roads. The method by which they are to
obtain the consent of the fiscal court to such use of the
public roads by their poles and wires is through the pur-
chase from the fiscal court, at public sale, of a franchise
as provided by section 164, constitution. In Cumberland
Telephone & Telegraph Co. v. City of Hickman, 129 Ky.,
220, and Nicholasville v. Board of Council, 18 Rep., 592,
we held that this section of the constitution is self-opera-
tive, and this being true, in order to make its provisions
applicable to section 4679b, Kentucky Statutes, it was
unnecessary for the legislature, in enacting that sec-
tion, to specifically declare therein that a telephone com-
pany, in order to obtain the use of the public roads of a
county for the erection and maintenance of its poles and
wires, should first obtain from the fiscal court a fran-

chise to do so. In providing that just compensation should be made by a telephone company for its use of the public roads by its poles and wires, the section as fully declared that such compensation must be through the purchase by the telephone company of a franchise from the fiscal court, as provided by section 164, constitution, as if it had in terms so stated. This is necessarily so, because the law provides no other means for the fiscal court to compel the payment of the compensation provided for; and the sale of the franchise to the telephone company by the fiscal court would, of course, carry with it the consent of that court to the telephone company's use of the public roads which both section 4306 and section 4679b make it necessary for the latter to obtain.

In thus viewing this question, we have not overlooked the fact that the fiscal court of Christian county is a court of limited jurisdiction, but, as we have shown, the authority it is here attempting to exercise in compelling the telephone company to purchase a franchise entitling it to the use of the public roads of the county for its poles and wires, is but a reasonable exercise of the powers conferred upon it by section 164, constitution, and sections 4306 and 4679b, Kentucky Statutes. The interpretation we have given these two sections of the statutes, in the light of the mandatory effect of the provisions of section 164, constitution, has been followed by some of the telephone companies doing business in this State. One of the telephone companies thus acting is the Cumberland Telephone & Telegraph Company, whose lines in Christian county were consolidated with those of the other telephone companies hereinbefore mentioned in forming the Christian-Todd Telephone Company. This appears from the opinion in the case of Cumberland Telephone & Telegraph Co. v. Cartwright Telephone Co., 128 Ky., 395, in which it is stated that prior to the erection of its poles and lines and the beginning of its business in the city of Springfield and county of Washington, the Cumberland Telephone & Telegraph Company purchased both from the city and county a franchise, the former giving it the use of the streets of the city, and the latter the use of the public roads of the county for the erection and maintenance of its poles and lines, and that the litigation in that case arose out of its alleged violation of both these franchises. The fact that section 163, constitution, expressly provides that none of the public utilities mentioned therein, including tele-

phone companies, shall make use of the streets, alleys or public grounds, with the appliances necessary to their business without the consent of the proper legislative bodies or boards thereof, does not militate against the reasonableness of the construction we have, in this case, given sections 4306, 4679b, Kentucky Statutes. As the provisions of the former make it necessary that the telephone company should obtain the consent of the fiscal court to its use of the public roads of the county and those of the latter, that it shall make just compensation for such use, and section 164, constitution, in effect, provides that such required consent cannot be given by the county (i. e., the fiscal court), or the necessary compensation made by the telephone company, without a sale by the fiscal court of a franchise and its purchase by the telephone company.

There is nothing in the provisions of section 4306 or 4679b which justifies the contention made by counsel for the telephone company that the only control that may be exercised by the fiscal court with reference to the use of the public roads for the erection and maintenance of the telephone company's poles and wires, is the power of location; that is, to require that they shall be so placed and the wires so strung thereon as that neither will interfere with travel along the highways or their proper maintenance. This cannot be the only authority possessed by the fiscal court, because regulation to this extent is found in section 4679b, which in express terms forbids the telephone company to so erect and maintain its poles and wires in the public roads, as to interfere with the public use thereof; its language being, "that fixtures of said company shall not interfere with the travel on and along said roads  *  *  *" In our opinion, the control of the public roads given the fiscal court by section 4306 goes far beyond such mere regulation. It is indeed so absolute that it compels the telephone company to obtain its consent to occupy the road with its poles and wires, and in giving such consent the fiscal court may impose reasonable rules and regulations under which the telephone company shall use the highways. Without such consent the telephone company, in occupying the public roads with its poles and lines becomes a mere trespasser. Therefore, its continued occupancy of the public roads may be prevented by injunction. East Tennessee Telephone Co. v. City of Russellville, 106 Ky., 667; East Tennessee Telephone Co. v. Anderson Telephone Co., 115

Ky., 448; Rough River Telephone Co. v. Cumberland Telephone & Telegraph. Co., 119 Ky., 470; Maraman v. Ohio Valley Telephone Co., 25 Rep., 784; Rural Home Telephone Co. v. K. & I. Telephone Co., 128 Ky., 209; Jackson-Hazard Telephone Co. v. Holliday's Admr., 143 Ky., 149.

After all, the controversy here is as to the degree of control to be exercised over the telephone company's right to use the public roads of Christian county. It seems to us that the regulations which the fiscal court desire to impose by the franchise they will afford the telephone company the opportunity of purchasing, are but reasonable, and, such as should enter into the grant; and to permit the telephone company to continue in possession of the public roads of Christian county in the maintenance of its poles and lines, in the operation of its business, in defiance of the authority of the fiscal court, would be to take away from the county, without just compensation, a most valuable right of property, which would be disastrous in the extreme to the public welfare.

For the reasons indicated, the motion to dissolve the injunction is overruled. Whole court sitting.