## Irvine Toll Bridge Company v. Estill County, et al.

(Decided June 19, 1925.)

### Appeal from Estill Circuit Court.

1. Franchises—"Franchise" Defined.—A franchise is a privilege of doing that which does not belong to the citizens of the country generally, by common right.

2. Franchises—No One Inherently Possesses Right to Grant Franchise, Except Sovereignty.—No one inherently possesses right to grant franchise, except sovereignty where it is proposed to be exercised.

3. Constitutional Law—Sovereignty May Delegate Right to Grant Franchise to Municipalities.—Sovereignty may delegate right to grant franchise to some or all of its municipalities as political subdivisions of government.

4. Bridges—Right to Maintain and Operate Toll Bridge Can be Done Only in Exercise of Legal Franchise.—The right to maintain and operate a toll bridge, especially across a navigable stream, can be done only in the exercise of a franchise legally created.

5. Constitutional Law—State May Delegate Authority to Grant Franchise, Either by General Statute, or by Constitutional Provision.—State may delegate authority to grant franchise, either by general statute (where private statutes are forbidden), or by constitutional provision.

6. Bridges—Fiscal Court Held Empowered to Grant Franchise to Construct and Operate Toll Bridge, with Right to Charge Stipulated Toll.—In view of Constitution, section 164, Ky. Stats., sections 1840, 4313, 4356c, and Carroll's Ky. Stats. 1909, section 4306, fiscal court held to have right and authority in 1909 to grant franchise to a bridge company to construct and operate a toll bridge across a navigable stream, with the right to charge stipulated toll.

7. Corporations—Officer of Corporation May Not Sell its Property in its Entirety, Without Specifically Conferred Authority.—Neither president nor other officer may sell corporate business and property in its entirety, in the absence of specifically conferred authority to sell.

8. Corporations—President of Bridge Company, in Absence of Authority from Stockholders, Not Authorized to Sell Bridge.—President of bridge company, in absence of authority from stockholders, held without authority to sell bridge, whatever may have been the customary method of the dealings of the company.

RIDDEL & SHUMATE, JOHN D. CARROLL and JOHN S. CARROLL for appellant.

JOHN W. WALKER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing on the original appeal and affirming on the cross-appeal.

A very material question in these consolidated cases and upon the solution of which depends the relevancy of many others raised and discussed, is: Whether a county in this Commonwealth, through its fiscal court, has the authority to create and sell a franchise to construct, maintain and operate a toll bridge across a navigable stream in the county? If that question is answered in the affirmative it will relieve the case, as above stated, of many other questions presented and argued. The question arises in this way: The fiscal court of Estill county in 1909 spread upon its order books by a vote of the requisite number of its members a resolution authorizing the sale of a franchise at public auction to the highest and best bidder to construct a toll bridge across Kentucky river at a point that could be used to connect the pike on either side of the river running from Irvine to Richmond, Kentucky, although at the particular point for which the franchise was granted there was no public road on either side of the river at that time. There was, however, a ferry across the river connecting the two portions of the pike located some 1,000 feet or more from the place where the bridge was to be constructed under the franchise. Pursuant to that resolution the sale of the franchise was duly advertised and the county court clerk of the county was directed to make the sale, which was done, and some individuals bought it and afterwards organized the corporation and constructed a steel bridge at a cost of about $26,000.00. The company procured strips of land from the respective abutments of the bridge connecting with each end of the pike and by appropriate orders it was turned into the bridge from both sides of the river, and from that time on it was operated under the toll charges fixed in the resolution authorizing the sale of the franchise.

In 1923 the county, conceiving that the fiscal court was without authority to create, sell or grant the franchise, and that the charging of toll for the use of the bridge was all the while illegal and because thereof the bridge had been dedicated to the public, brought an action in the Estill circuit court seeking to enjoin the bridge company from further collecting toll for the use of its bridge and that it be enjoined from removing the bridge

or interfering with the free use thereof. Issues were made in that case, but before evidence was taken on any of them the president of the bridge company, with its attorneys, and the judge of Estill county, with its attorney, entered into an agreement, the substance of which was that the bridge company would be permitted to operate the bridge and to charge the stipulated tolls until it realized a net sum of $16,000.00, which was the price that Estill county agreed to give for the purchase of the bridge, and after such net sum was realized the bridge would become the property of the county. In other words, the substance of that agreement was that the president of the bridge company sold to Estill county its bridge for the sum of $16,000.00, but the county did not have the money with which to pay the purchase price and agreed that the bridge company might earn it for the county by operating the bridge and thereby pay itself for its own property, which was nothing more nor less than the company paying itself for its own property from earnings by its operation and then giving its property to the county. That agreement was filed in the case and recorded as an "Agreed Judgment." Within a comparatively short time thereafter the bridge company filed its independent petition in the Estil circuit court against the county seeking to set aside the alleged "agreed judgment" and to enjoin the county from molesting and disturbing it in the maintenance and operation of its bridge.

At or about the expiration of the time when the bridge company had earned $16,000.00 net, under the terms of the alleged agreed judgment, the county brought another action against the bridge company in the nature of an action in ejectment to recover from defendant therein (the bridge company) the possession of the bridge, which the county claimed had become its property under its contract of purchase as set forth in the alleged agreed judgment. In the meantime, certain citizens and taxpayers filed an intervening petition in the consolidated causes praying and asking for substantially the same relief as did Estill county in its original and first petition. Extensive preparations were made in the consolidated causes and upon final submission the court set aside the alleged agreed judgment in the first cause brought by Estill county, but adjudged that the fiscal court had no right to grant the bridge company a franchise and, as a consequence, the latter had no right to charge tolls for

the use of the bridge and that, notwithstanding it had done so, it was illegal, and the permission of the bridge company for the public to use its bridge since its completion amounted to a dedication of it to the public and enjoined it from continuing to charge tolls or from in any wise obstructing its free use by the traveling public. To reverse that judgment the bridge company prosecutes this appeal and the county has obtained in this court a cross-appeal from the judgment of the trial court setting aside the alleged agreed judgment. With this brief recitation of the history of the litigation we will now proceed to a consideration of the first question stated above, *i. e.*, whether the Estill fiscal court was acting within its authority when it created and sold the franchise to construct a bridge with the right to charge toll for its use?

At the beginning of the discussion it might be well to keep in mind some fundamental principles affecting the subject matters involved, among which are, that a franchise "is the privilege of doing that 'which does not belong to the citizens of the country generally by common right;' " that no one inherently possesses the right to grant a franchise, except the sovereignty within which it is proposed to be exercised, but that it is competent for such sovereignty to delegate the right to grant the franchise to some or all of its municipalities as political subdivisions of the government, or perhaps it may vest such power to such agencies of government as it sees proper, and: Lastly, that the right to maintain and operate a toll bridge, especially across a navigable stream, can be done only in the exercise of a franchise legally created. We will consume neither time nor space in citing authorities in support of those general observations, since they are so firmly settled as to require none. It is equally well settled that the means by which a state may delegate its authority to grant franchises may be by a general statute (where private statutes are forbidden) or by a constitutional provision, and a number of the states of the union have such provisions. With these preliminary statements we will now proceed to a consideration of the condition of our laws upon the subject.

We have been cited to no statute nor have we been able to find one *expressly* conferring upon a county or any other subdivision or agency of the state the right to grant a franchise to construct and maintain a toll bridge; or any other franchise affecting highways or bridges except "Ferry privileges," and the statute pertaining to

granting of franchises to operate ferries was enacted long before the adoption of our present Constitution, and its section 164 says: "No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway." And it was held in the case of Christian-Todd Telephone Co. v. Commonwealth, 156 Ky. 567, and numerous other cases cited in the notes to that section as published in the 1922 edition of Carroll's Statutes, that the provisions of the section were self-operative and conferred upon the counties and municipalities authority to grant franchises pertaining to subjects of which they were given jurisdiction. In other words, the cases referred to hold that such political subdivisions of the state were delegated the power by the provisions of that section to grant franchises with reference to proper subjects in their territory of which they were given supervisory jurisdiction by the laws of the state.

Section 1840 of our present statutes contains a general enumeration of subjects of which the fiscal courts of the various counties of the state are given authority, "to erect and keep in repair bridges and other structures and superintend the same. . . . And provide for the good condition of the highways in the county." Section 4306 of Carroll's edition of the Kentucky Statutes of 1909, which was in effect at the time of the attempted granting of the franchise herein, said in part: "The fiscal court of each county shall have general charge and supervision of the public roads and bridges therein, and shall prescribe necessary rules and regulations for repairing and keeping same in order, and for the proper management of all roads and bridges in such county under and subject to the provisions of the act." Section 4313 of the present (1922) statutes says: "When any joint stock company incorporated in this state, shall have been formed to construct a turnpike, road or bridge, wholly or in part in any county, the fiscal court of such county may subscribe for, take, hold, and dispose of stock in such company. . . . Such subscriptions not to exceed $1,000.00 for each mile of turnpike and thirty per cent (30%) of the

cost of such bridge." Section 4356c confers power and authority upon the county road engineer of any county upon complaint on oath and in writing to make an examination of the toll bridge involved and to require its owner to repair it, thus indicating that it was the purpose of the legislature to confer upon the respective counties of the state, through their county road engineer, authority over and supervision of toll bridges, in the county, whether constructed theretofore or thereafter, and the application of the statute to previously constructed ones was at least a tacit recognition of the validity of their construction. It is true that the last two sections referred to had not been enacted in 1909 when the franchise was granted to appellant, but there were then in existence other sections (4727, 4734 and 4747) of the 1909 edition of Carroll's Kentucky Statutes, containing the same recognition of the authority of the counties and their fiscal courts over roads and bridges. While none of the sections referred to, either then or thereafter enacted, *expressly* confers the right on the fiscal courts of the various counties to *grant* franchises for the construction and operation of toll bridges, they are cited herein for the purpose of showing that the regulation, supervision and general control of such bridges located within the county have been lodged with the fiscal courts throughout the state by statutes clearly indicating the legislative policy and purpose to place such quasi public structures under the control and regulation of the fiscal courts of the counties where they exist, and to confer power upon such courts to legally bring them into existence.

That the means whereby travelers upon the public highways, which are under the jurisdiction of fiscal courts, may cross streams is a proper subject for the granting of a franchise is illustrated by our legislative policy as declared in the statute relating to the granting of ferry privileges. However, the accomplishment by operation of ferries is, after all, nothing more than enabling the traveler to get from one side of a stream to which runs a public road, to the other one where there is a continuation of the same road. More directly stated, it involves only the means whereby the traveler may get across the stream, and if the right to so transport the traveler is a proper subject for the granting of the franchise it is difficult for us to see why some other method whereby the same object could be accomplished should not also be the proper subject for the granting of a fran-

chise. Logically there can be no difference, and we have been unable to find anything in our statutes or Constitution recognizing any such difference, unless it be that as to ferries a statute has been enacted. But when we consider that section 164, *supra,* of the Constitution has been construed to be self-operative, then it necessarily applies to all subjects of which the fiscal court has the required jurisdiction, unless some other particular one has been especially provided for as is true with reference to ferries. There was no statute authorizing the sale of a franchise to a telephone or other public utility company at the time the Christian-Todd Telephone Company case, *supra,* was decided, nor is there any such statute now so far as we have been able to find; but because of the self-operative provisions of section 164 of the Constitution it was held that the fiscal court not only could grant such franchises, but that the method pointed out in the section was the only one to be followed. If, as the cases referred to hold, a franchise issuing from the public highways may be sold for one purpose, it is difficult for us to see why they should not also be sold for another purpose coming within the same privileged class and also be a proper purpose to be exercised *under a franchise* as toll bridges are.

But it is said that the cases of Town of Jackson v. Breathitt County, 32 Ky. L. R. 199; American C. & F. Co. v. Johnson County, 147 Ky. 69; Breathitt County v. Hammons, 150 Ky. 502, and City of Pineville v. Pineville Bridge Co., 179 Ky. 375, are to the effect that the fiscal court has no authority to sell a franchise to operate a toll bridge. A careful reading of those opinions will serve to show the error in the construction placed upon them by counsel for Estill county. The first one (Town of Jackson v. Breathitt County) involved only the *single* question of the right of the town of Jackson to recover from Breathitt county a bridge which the latter built in the corporate limits of the town at its exclusive cost under a right attempted to be conferred by the authorities of the town, and it was held that plaintiff therein manifested no right to the relief sought. In the Hammons case the only point involved was whether under existing laws the county could itself, out of public funds, construct a bridge as a part of the highway and charge tolls for its use, although, as we have seen, the county might become a stockholder in a toll bridge company to the extent of thirty per cent of its cost, but which point was not re-

ferred to in that opinion. However, it could have had no effect upon the question there decided. Clearly, therefore, that case does not touch the question here involved, for it was based altogether upon the proposition that the county itself could not embark in any sort of private commercial enterprise unless specifically authorized to do so by the prevailing law, and then only to the extent of the authority conferred.

In the Johnson case the question involved was whether a fiscal court could grant a franchise to maintain a logging boom in a navigable or other stream, and it was held that there was no statute or constitutional provision in this Commonwealth conferring jurisdiction of such streams on fiscal courts, and in that opinion we said: "As we do not find in this section any warrant for the fiscal court to exercise control over the streams of the county, whether navigable or not, we must hold that the fiscal court had no authority to grant a franchise that obstructed or affected in any way the use of John's creek. The right to grant a franchise presupposes and is based upon the right of the authority granting the franchise *to control* the property over which the franchise is granted or which is affected by it. For example, the fiscal court could grant a franchise authorizing the erection of poles along the highways of the county, *as the fiscal court has control of the highways.* And so, municipal corporations may grant franchises to use the streets and public ways of a city, as the municipality has control of the streets and public ways. But a municipality would have no right to grant a franchise to use or occupy in any manner the private grounds of a citizen within the municipality; nor would the fiscal court nor the county court have the right to grant a franchise for any purpose that would affect the private property of a citizen of the county. So far as we are advised, the water courses of a county are not under the *control* of the fiscal court, except at such points as their use may be necessary *in the construction and maintenance of the highways* of the county, and the fiscal court has no more authority to grant a franchise or privilege to use a stream of water than it would be to grant a franchise or privilege to use any of the privately owned land in the county." (Our italics.)

The only question involved in the Pineville Bridge Company case was whether the bridge company had legally obtained a franchise to charge tolls to travel over

its bridge. No effort had been made by either the city of Pineville or Bell county to create and sell a franchise pursuant to the provisions of section 164 of the Constitution, and the only foundation for the right was an insertion in the corporate articles of the bridge company for the right to charge tolls, and we held that it could not be so acquired. It is true that in the course of the opinion reference was made to the fact that the legislature had not enacted any statute with reference to the subject of granting franchises for the collection of tolls for using a bridge, but which statement necessarily overlooked the interpretation we have herein given to section 164 of the Constitution, and it was literally correct in stating that no *statute* had been enacted, although that statement was not necessary to the determination of the question in the case.

Without lengthening the opinion on this branch of the case, and which is already too long, we will close the discussion by saying that it is our conclusion, in view of the section of the Constitution referred to and the vari-·ous sections of the statute, with the excerpts found in the cited opinions, that the fiscal court of Estill county had the right and authority at the time it attempted to exercise it to grant the franchise to appellant to construct and operate its bridge, with the right to charge the stipulated toll.

The next question is: Whether the court erred in setting aside the alleged agreed judgment, and upon which we feel that little need be said. Waiving the question as to whether that alleged judgment came within the purview of the relief sought as manifested by the pleadings and was, therefore, germane to the issues raised by them, we are clearly of the opinion that the president of the bridge company had no right to agree to it in the terms in which it was written. As we have seen, its effect was none other than a selling or more properly a giving of the bridge to Estill county. No move of any kind had been taken by the stockholders of the bridge company to either sell or give its property to the county or to authorize its president to do so, and the mere beginner in the practice of the profession knows that neither a president nor any other officer of a corporation has the right, in the absence of specifically conferred authority, to sell, in its entirety, the business and property of the corporation. Counsel for the county admits the law to be so, but he contends that by a customary method of dealing the bridge company in this case lifted the limitations upon

the authority of its president and thereby vested him with the authority to enter into the contract which was the basis of the alleged agreed judgment, and in support of that position he cites a number of cases, some of which are from this court, wherein such conduct and customary method of dealing has served to confer corporate authority upon some officers that they otherwise would not have possessed, and which principle of law is well settled. However, each of those cases affected only the *management* of the corporate affairs and the general conduct of its business as a *going concern* and did not relate to an entire selling out or giving away of its business and its property. Indeed, there could be no such customary method of conferring that particular authority, since the first sale under it would end the matter and leave nothing for subsequent similar acts to operate upon, and one act only is not sufficient to create a custom.

The agreement in this case by the president of the bridge company was without authority, and no prior act of the company can be taken as conferring any such authority and the judgment was, therefore, void and the court properly so held. The two questions hereinbefore disposed of renders it unnecessary to discuss any of the others presented in the record and argued in briefs. They relate chiefly to the validity and effect of chapter 149, Acts of 1924, page 501, and to the rights of the parties, if it should be determined that the fiscal court had no authority to grant the franchise, but having held that it did possess such authority it becomes unnecessary to even refer to, much less discuss, any of the other questions.

Wherefore, the judgment is reversed on the original appeal and affirmed on the cross-appeal, with directions to dismiss both petitions of the county as well as the pleading of its taxpayers and citizens, and to sustain the prayer of the petition filed by the bridge company, and for such orders and proceedings as may be necessary to carry into effect the principles of this opinion.