## Warfield Natural Gas Co. v. Lawrence County.

June 12, 1945.

Wells & Wells and B. J. Pettigrew for appellant.

J. W. Hinkle and Clyde L. Miller for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

In 1918, the Fiscal Court of Lawrence County granted to the United Fuel Gas Company (predecessor in title to the Warfield Natural Gas Company), its successors and assigns, " * * * the right of way, to erect, maintain, operate and finally to remove, a ten-inch pipe line for the transportation of gas across the county bridge known as the old C. & O. Railway bridge * * *." The consideration paid by the Company was $150. The pipe line was to be placed so as not to interfere with the free and unobstructed use of the bridge. The order also contained this provision:

"The said grantees hereby agree to pay all damages which may arise to said bridge by the erection maintaining, and operation or removal of said pipe line; and said damages, if not mutually agreed upon to be ascertained and determined by three disinterested persons, one thereof to be appointed by said grantor, one by said grantee, its successors or assigns and the third by the two so appointed as aforesaid and the reward of such persons or any two of them shall be final and conclusive." Early in 1944, the appellee filed a petition in equity seeking to have the Company remove the pipe line from the bridge. The petition sets forth that the Company had refused to pay the county anything for the use of the bridge. The Company's demurrer to the petition was overruled; and, among other things, the answer set forth that the pipe line had been constructed and maintained so as not to interfere with or endanger travel over the bridge, which was a part of the county road system of Lawrence County, and that it was authorized under state law to construct, maintain and operate a pipe line or lines over and along the road and bridge in question. The appeal is from a judgment in favor of the county.

It may be conceded at the outset that the right granted in 1918 to use the bridge was nothing more than an easement, and could be revoked under proper proceedings. We think, however, that the crucial point in the case is the right given certain utility companies under KRS 416.140 to use public roads. The pertinent part of this section follows:

"(1) Subject to the provisions of subsections (2) and (3) of this section, any person authorized under the laws

of this state to conduct the business of producing and supplying electricity, gas or gasoline for purposes of light, heat or power, and who is engaged in the business of the transmission or sale of electricity, gas or gasoline for such purposes, may construct and maintain transmission lines, including placing and maintenance of poles, wires, crossarms and all other equipment incident thereto, for use in the transmission and sale of such electricity, gas or gasoline under, on, along or over any state highway or county road, outside the limits of a city, and over, under or across any of the waters of this state outside the limits of a city, and may construct and maintain along any such state highway or county road all erections and appliances that are necessary to transform, convert and apply such electricity, gas or gasoline to the purposes of lighting, heat or power and to distribute and deliver it to the consumers.

"(2) The fixtures of the company shall not interfere with, obstruct or endanger the travel on and along the highway or road, nor obstruct the navigation of the waters, and the location of all transmission lines and other appliances shall be subject to the reasonable direction and regulation of the authorities having control of the highways, roads and waters through and over which the lines are constructed or proposed to be constructed."

The statute just quoted was a part of Chapter 196 of the Acts of 1926. As originally enacted, it provided that the right to use public roads could be granted only upon the making of "just compensation" by the utilities. The words "just compensation" were omitted when the 1942 revision of the statutes was prepared. Section 164 of the Constitution provides that no county, city, town, taxing district or other municipality shall be authorized or permitted to grant a franchise or privilege, or make any contract in reference thereto for a term exceeding 20 years, and that any such franchise or privilege shall be granted only upon the due advertisement for competitive bids. In commenting upon the question as to whether this section of the Constitution applies when a right is granted by the State itself, this Court said in the case of Tri-State Ferry Co. v. Birney, 235 Ky. 540, 31 S. W. 2d 932, 933:

"The limitations created by this section are by the provisions of the section itself applicable only to action

by municipalities or other local subdivisions as to matters under their control. The section does not refer to the Legislature nor to matters which the Legislature may withhold from municipal or local control. The inherent right to grant a franchise inheres in the sovereignty within which it is proposed to exercise that franchise, but, as said in the case of Irvine Toll Bridge Co. v. Estill County, 210 Ky. 170, 275 S. W. 634, 636:

" 'It is competent for such sovereignty to delegate the right to grant the franchise to some or all of its municipalities as political subdivisions of the government, or perhaps it may vest such power in such agencies of government as it sees proper.'

"When the Legislature does delegate the right to grant a franchise to some political subdivision of the government, then the provisions of section 164 of the Constitution come into play. But when the Legislature retains to itself the granting of the franchise, the provisions of section 164 of the Constitution have no application. The granting of a ferry franchise has never been expressly confided by the Legislature to any municipality or local political subdivision of the government, nor does any section of our State Constitution require the Legislature to do so * * *." Under KRS 416.140 the State has reserved to itself the right to grant the named utilities permission to use public roads, and has not delegated that right to any of its political subdivisions.

The appellee advances the argument that the legislature had no right to grant to gas companies the right to lay their lines along county highways without making just compensation therefor. The provision of Section 177 of the Constitution to the effect that the Commonwealth shall not become the owner or stockholder in, or make donations to any company, association or corporation, is cited in support thereof. We do not think the provisions of that section of the Constitution cover a situation such as the one here involved. The utilities, which have been permitted to use the public roads, are required to use them in such a manner as not to interfere with the convenience of the traveling public, and they are also required to repair any damage done, and the governing bodies of the local units through which the facilities pass are authorized to exercise a reasonable direction and regulation of the manner in which the roads

are being used. It could be argued with force that a valuable consideration would inure to the benefit of a political subdivision by the making available of gas and light service to its citizens through the use of its public roads.

It can be seen from the foregoing quotation that the order of the fiscal court, in 1918, granting the right to use the bridge, contemplated that any damage arising from the use of the bridge should be paid by the Company. It strikes us that the governing body of a local unit would be authorized to require a utility to meet any added expense which could be shown to have arisen from the use of the road or bridge.

The appellee relies upon the case of Christian-Todd Telephone Co. v. Commonwealth, 156 Ky. 557, 161 S. W. 543. In that case the statute under which the Telephone Company was claiming the right to use a public road directed that upon payment of "just compensation" it should have such a privilege. The Court reached the conclusion that, when that provision was considered along with the one giving the fiscal court general supervision of the public roads, and Section 164 of the Constitution, the Telephone Company did not have the right to construct and operate its lines along the county roads without first acquiring by purchase from the county a franchise. We have noted heretofore that the words "for just compensation" have been omitted from KRS 416.140. It is true that those words still appear in the section of the statutes relating to telephone companies (KRS 278.540), but that question has no bearing upon our decision in the case at bar.

Judgment reversed, with directions to set it aside, and for the entry of a judgment in conformity with this opinion.